■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS S. ROSEN, Appellant.—Judgment, Supreme Court, New York County (Harold J. Rothwax, J.), rendered May 23, 1990, convicting defendant, after a jury trial, of 25 counts of grand larceny in the second degree, nine counts of offering a false instrument for filing in the first degree, two counts of securities fraud, and one count each of a scheme to defraud in the first degree and conspiracy in the fifth degree, and sentencing him to an aggregate term of imprisonment of from 16 to 48 years, which was reduced by operation of law to a term of

imprisonment of from 10 to 20 years (Penal Law § 70.30 [1] [c] [i]), affirmed. The case is remitted to the criminal court to direct defendant's surrender (CPL 460.50 [5]).

Defendant was a financial comptroller and one of the chief administrators of a complicated scheme, involving over 30 companies, to defraud investors through the sale of fraudulent real estate tax shelters, in which funds were taken from investors under false pretenses, funnelled through false accounts, and used to start up new companies. These schemes eventually resulted in a theft of $152,000,000 from some 2400 investors, and the near collapse of four financial institutions.

After a week of trial, defendant expressed dissatisfaction with counsel and requested a mistrial so that new counsel could be substituted. Defendant's contention on appeal that the denial of his motion deprived him of his right to counsel is without merit, defendant having failed to carry his substantial burden of demonstrating good cause for substitution of counsel *(People v Medina,* 44 NY2d 199, 207-208) necessitated by forces beyond his control *(People v Arroyave,* 49 NY2d 264, 271-272). The timing of the motion enhanced defendant's burden of demonstrating the existence of exigent or compelling circumstances *(supra),* and it does not appear that the trial court abused its discretion *(People v Tineo,* 64 NY2d 531, 537; *cf., People v Sides,* 75 NY2d 822, 824).

Defendant failed to preserve by specific and timely objection any challenge to the court's preclusion of further inquiry on cross-examination of one of the People's witnesses as to her knowledge of the reputation in the community of another of the People's witnesses *(People v George,* 67 NY2d 817; *People v Trinidad,* 177 AD2d 286, *lv denied* 79 NY2d 865). Since the infirmity in this line of inquiry concerned defendant's failure to lay an appropriate foundation *(see, People v Bouton,* 50 NY2d 130, 139-140) rather than any misapprehension of the law by the court, there is no reason to review the court's ruling in the interest of justice.

Nor, did defendant preserve any challenge that court personnel improperly communicated with a juror in defendant's absence. In any event, the exchanges in question were merely ministerial *(People v Roldan,* 173 AD2d 233, *lv denied* 78 NY2d 926; *People v Townes,* 165 AD2d 761, *lv denied* 77 NY2d 844).

Likewise, defendant failed to preserve by specific and timely objection any claim that the court excessively interfered in the cross-examination of one of the People's witnesses *(People*

*v Charleston,* 56 NY2d 886; *People v Hunt,* 167 AD2d 272, *lv denied* 77 NY2d 878) and defendant's motion for a mistrial several days later did not serve to revive the unpreserved claim *(People v De Mauro,* 48 NY2d 892, 893; *People v Merriweather,* 175 AD2d 90, *lv denied* 78 NY2d 1013). Moreover, in light of defendant's failure to present a reviewable record that the court's demeanor reflected unfavorably on him, we find no basis for reviewing such claim in the interest of justice.

Also unpreserved by timely specific objections are defendant's challenges to the cross-examination of his own character witnesses and the prosecutor's summation comments *(People v Rivera,* 73 NY2d 941; *People v Balls,* 69 NY2d 641). Again, we decline to review these claims in the interest of justice.

The defendant contends that he was excluded from sidebar conversations, although his counsel, who was kept on as an advisor, took part. When the defendant raised the question with the Trial Judge, the Judge said that he had thought that counsel was informing the defendant of what had taken place. The defendant conceded this, but contended that a two minute explanation did not match a twenty minute sidebar.

After the objection by defendant, the Judge ordered that sidebars be dispensed with and that everything be on the record.

While the matter is not free from doubt in view of the recent decisions of the Court of Appeals in *People v Dokes* (79 NY2d 656 *[Sandoval* hearing]) and *People v Sloan* (79 NY2d 386 [voir dire]), when objection was made the court took the proper steps.

Finally, we find no basis to disturb the sentencing court's exercise of discretion. Concur—Carro, J. P., Kupferman, Asch and Smith, JJ.

Milonas, J., dissents in part in a memorandum as follows: In my opinion, defendant's sentence should be reduced to a term of imprisonment of from 7 to 21 years in order to bring it into conformity with the State punishment received by the prime mover, John Peter Galanis, in the subject fraudulent tax shelter scheme.

At sentence, the trial court imposed various consecutive sentences for an aggregate term of from 16 to 48 years, which was subsequently reduced by law to the maximum term allowable under the law of 10 to 20 years pursuant to Penal Law § 70.30 (1) (c) (i), which limits the maximum term to 20 years and deems the minimum to be one-half of the aggregate

maximum, as reduced. While it is impossible to minimize the scale of the theft in which defendant participated, resulting in the victimization of numerous individual investors, as well as the looting and virtual destruction of four financial institutions, the fact is that his culpability, as considerable as it is, does not exceed that of Galanis, who created and organized the fraudulent arrangement. Galanis received a State prison sentence of 7 to 21 years. It should be noted that Galanis' State sentence was made concurrent with a Federal sentence which was also imposed upon him, and the total is equivalent to 9 to 27 years, but defendant was only prosecuted by the State authorities and should not be treated so much more harshly than was the individual who was the initiator, and primarily responsible for, the wrongdoing of which defendant was convicted. In effect, defendant is being punished for choosing to go to trial. Moreover, as defendant points out, the minimum sentence which he must serve is greater than that imposed upon all of the other twelve defendants combined, which were the following:

| Defendant | Term of Imprisonment | |
|---|---|---|
| Galanis | 7-21 years | (concurrent with Federal sentence equivalent to 9-27 years) |
| Rosengarten | 1-3 years | (concurrent with Federal sentence) |
| Mason | 1 year | |
| Perrin | 1 year | |
| Lewis | none | (conditional discharge) |
| Williams | none | (conditional discharge) |
| Klusky | none | (conditional discharge) |
| Weynert | none | (conditional discharge) |
| Tocicki | none | (conditional discharge) |
| Sloan | none | (conditional discharge) |
| Young | none | (conditional discharge) |
| Ayash | none | (probation) |
| Total | 10-24 years | |

Shortly before trial, defendant was advised that he had been offered a plea of 1⅓ to 4 years by the court, which would escalate to 5 to 15 years after a jury was impaneled and did, in fact, increase drastically to 16 to 48 years after he proceeded to trial. Yet, as the court explained in *People v Patterson* (106 AD2d 520, 520-521):

"Plea bargaining is an acknowledged part of our criminal justice system *(Bordenkircher v Hayes,* 434 US 357). During the bargaining process, the State may encourage a guilty plea by offering certain benefits, such as a reduced exposure to the potential maximum sentence otherwise available, notwithstanding the fact that this has the effect of discouraging a defendant's assertion of his right to a trial *(Corbitt v New Jersey,* 439 US 212; *People v Pena,* 50 NY2d 400, cert den 449 1087). By pleading guilty, the defendant may avoid the danger of a more serious conviction with its attendant consequences. The People, in turn, are relieved of the need to try the defendant, produce witnesses, or inconvenience the complainant, and they avoid the ultimate danger that the trial may not end successfully for the prosecution. Guilty pleas also help to conserve the rather limited resources available to prosecutorial agencies and the judicial system. There can be little doubt, however, that the sentence offered as an inducement for a guilty plea is at times more reflective of the respective bargaining leverages of the parties than the purer principles that should underlie a sentence imposed in the absence of the plea-bargaining process.

"Once a defendant has been convicted after trial, the sentence to be imposed can reflect the sentencing principles appropriate to the individual case, for the leverages involved in the plea-bargaining process are gone. Therefore, the fact that a sentence imposed after trial is greater than that offered during a plea negotiation is no indication that the defendant is being punished for asserting his right to proceed to trial. A person may not, of course, be punished for doing what the law allows him to do *(Bordenkircher v Hayes, supra; People v Pena, supra).* If a defendant refuses to plead guilty and goes to trial, retaliation or vindictiveness may play no role in sentencing following a conviction *(Corbitt v New Jersey, supra).* Rather, the conventional concerns involved in sentencing, which include the considerations of deterrence, rehabilitation, retribution, and isolation, must be the only factors weighed when sentence is imposed *(People v Suitte,* 90 AD2d 80; *People v Notey,* 72 AD2d 279)."

Since the differential between the proposed sentence defendant would have received had he agreed to plead guilty and the sentence that was actually imposed upon him is so enormous, it is clear that he paid an exorbitant price for exercising his legal right to trial. In fact, following defendant's sentencing, the District Attorney announced that defendant had gotten one of the largest State prison terms ever meted

out in a white-collar criminal prosecution (New York Times, May 24, 1990, at B5, C1). Further, it is significant that State prosecutors were initially willing to accept a one year plea, presumably if defendant cooperated with them, and he rejected this proposal notwithstanding that he apparently assisted the Federal authorities, who decided not even to indict him. Moreover, unlike Galanis, who had a prior conviction for securities fraud, defendant had no previous criminal record and did not personally profit from the fraud anywhere near to the extent that Galanis did.

According to the report prepared by the United States Sentencing Commission for the year October 1, 1990 through September 30, 1991, the average Federal sentence imposed upon the white-collar crime of fraud is 17.6 months, for embezzlement is 11.9 months, for forgery and counterfeiting is 16.6 months, for tax offenses is 13.1 months and for money laundering is 40.6 months. Without denigrating the extreme seriousness of defendant's criminal conduct, it is necessary to point out how out-of-line his sentence is with other sentences prescribed for white-collar offenses of greater magnitude. For example, the 10 year prison sentence accorded a very famous white-collar offender, commonly deemed to be an extremely severe one, will result in his incarceration for an actual term many years less than that to be served by defendant herein, who must do 10 years before he is even eligible for parole. In that regard, defendant would serve more time even were his term of imprisonment to be reduced to 7 to 21 years, to make it commensurate with the sentence given to Galanis, the prime mover of the fraudulent scheme. Under these circumstances, the sentence imposed upon defendant was excessive and an abuse of discretion.