*241 OPINION OF THE COURT
Chief Judge Kaye.
A defendant in a criminal trial who has exercised the right to self-representation may not be arbitrarily and categorically excluded from sidebar conferences. That having occurred here, a new trial is necessary.
Defendant Louis Rosen, along with nine others, was indicted on charges of conspiracy, grand larceny and other felonies arising out of a complex scheme to defraud investors through the sale of real estate limited partnership tax shelters. The evidence at trial revealed that 2,400 investors lost an aggregate of $152 million and that four financial institutions were brought to the brink of collapse.
The conspiracy, headed by John Galanis, extended from February 1984 through June 1986. Defendant was hired by the Galanis organization in late 1984 to assume high-level financial and administrative responsibilities. Of the indicted conspirators, only defendant went to trial. The others pleaded guilty, and some cooperated with the prosecution and testified against defendant. Defendant’s trial strategy was to concede the existence of a fraudulent scheme but to deny knowledge or intent.
After the prosecution’s first witness testified, defendant’s assigned counsel sought a mistrial, arguing that questions posed by the court to the witness assisted the prosecution and that the court could not provide a fair trial because it had expressed an opinion regarding defendant’s guilt in an off-the-record discussion. The court denied counsel’s motion, adding: "For that matter you told me you thought Mr. Rosen was guilty in our off the record conversation.” The court also stated that its intercession in the examination was necessary because defense counsel did not ask questions properly.
The next morning, defense counsel moved for a mistrial and assignment of new counsel, reporting that his client had lost confidence in his ability based on the previous day’s colloquy. The motion was denied. The following week, after several more witnesses testified for the People, defendant informed the court that he wished to represent himself for the remainder of the trial because of his counsel’s numerous factual mistakes and inadequate cross-examination. The court explained the dangers inherent in defendant’s proposed course, but after conferring with his counsel, defendant insisted. Accordingly, the court granted defendant’s request to proceed *242 as his own lawyer, with counsel remaining as defendant’s "legal advisor.”
The court imposed two absolute restrictions on the arrangement. First, either defendant or his legal advisor, but not both, could question a witness; and second, defendant would not be allowed to attend any sidebar conferences. Defendant’s request to attend sidebars was rejected in the following colloquy:
"[counsel]: Yes, there is a matter that needs to be cleared up at this time. If Mr. Rosen plans on questioning as he does and if there is a sidebar, or if there is a sidebar which has occurred prior to this time, Mr. Rosen requests that he be allowed to attend the sidebar.
"the court: I won’t be having sidebars with Mr. Rosen. If it is necessary I will excuse the jury. There will be no sidebars with Mr. Rosen.”
Defendant thereafter assumed active control of his defense. He personally cross-examined 10 of the People’s 11 remaining witnesses, some examinations lasting hours. (The eleventh witness was not cross-examined.) Defendant also examined five defense witnesses, introduced exhibits, made motions and delivered the summation.
Nevertheless, as the court had instructed, sidebar conferences did not include defendant. Some involved purely "housekeeping” matters, others substantive issues, others were off the record. Some were held in the jury’s presence, others not; some were initiated by the court, others by standby counsel.
After the People rested, defendant (who had ordered daily copy of the transcript) complained that off-the-record conferences were unfair because reports of the conferences were secondhand and "diluted.” Defendant cited as an example a 12 to 15 minute sidebar that was summarized for him in two minutes. In the course of his request — which was granted— that all future conferences be recorded, defendant recited his understanding of the court’s previous ruling whereby defendant would "not [be] attending bench conferences, and if necessary * * * you would have the jury leave; or if the jury wasn’t here you would instead of having a bench conference, you would have it in open court and on the record,” to which the court responded, "Exactly.”
Defendant was convicted of conspiracy, grand larceny, securities fraud, offering a false instrument for filing and scheme *243 to defraud, and sentenced to a term of imprisonment totalling 16 to 48 years, which by operation of law was reduced to 10 to 20 years. At the Appellate Division, defendant argued, among other things, that the trial court erred in excluding him, as a pro se defendant, from sidebar conferences. The Appellate Division affirmed, noting however that the issue was "not free from doubt” (185 AD2d 128, 130) in light of recent decisions of this Court. We reverse.
Our State Constitution declares: "In any trial in any court whatever the party accused shall he allowed to appear and defend in person and with counsel” (NY Const, art I, § 6, emphasis added; see also, People v McIntyre, 36 NY2d 10, 15; People v Koch, 299 NY 378, 381; People v Price, 262 NY 410, 411). Unlike the Federal right to self-representation, which is only implicit in the Sixth Amendment (see, Faretta v California, 422 US 806, 818-819), the State constitutional right is explicit and unambiguous.*
It is helpful at the outset to note what this case is not about. A defendant v/ho has elected to proceed pro se is both an accused and an attorney. Accordingly, cases discussing defendant’s right to be present at sidebar — solely in the role of the accused (see, e.g., People v Antommarchi, 80 NY2d 247, 250; People v Velasco, 77 NY2d 469, 472-473) — are inapposite. A defendant’s right to be present at material stages of trial stems from the Due Process Clauses of the State and Federal Constitutions as well as statute (see, People v Morales, 80 NY2d 450, 453-457), while the right to appear at trial in the role of attorney derives primarily from article I, § 6 of the State Constitution and the Sixth Amendment to the Federal Constitution (see, People v McIntyre, 36 NY2d, at 10; Faretta v California, 422 US, at 818).
Nor, contrary to the People’s contention, is this case about discretionary trial management. Although a Judge may reasonably limit the conduct of sidebar discussions, the court’s summary order that there "will be no sidebars with Mr. Rosen,” arbitrarily impacting as it did only defendant (but not standby counsel or the two prosecutors) reveals that the preclusion was not evenhandedly imposed to manage the *244 orderly progress of the proceedings. Indeed, the court offered to dismiss the jury if defendant wished to address the court, a more disruptive measure than simply allowing defendant to stand at sidebar.
The issue that is presented here is whether the trial court may, consistent with the State constitutional provision securing the right to "appear and defend in person,” arbitrarily bar only the pro se defendant from sidebar conferences despite his specific request to attend.
A defendant’s desire to conduct the defense may arise from a variety of reasons, ranging from the practical to the nefarious (see, People v McIntyre, 36 NY2d, at 16). Here, defendant was motivated by dissatisfaction with his counsel’s performance. Indeed, by all accounts, defendant was considerably more familiar than counsel with the intricate workings of Galanis’ operation and the 12,000 pages of discovery material. His motion for a mistrial to obtain new counsel having been denied, defendant concluded, after appropriate judicial admonition, that his interests would be furthered by self-representation. Such a decision obviously entailed both risks and benefits.
A defendant lacking legal training and courtroom experience may be at a decided disadvantage in carrying out the complex task of presenting a defense. Thus, most defendants choose to be represented by counsel, and necessarily delegate substantial control of the case to the lawyer, except for certain fundamental decisions — for example, whether to testify or waive a jury (People v Ferguson, 67 NY2d 383, 390). Hence, the accused ordinarily plays a relatively passive advocacy role and is bound by the innumerable strategic choices made by counsel during trial.
By contrast, the status of a defendant who elects to proceed pro se changes dramatically. The defendant has perforce rejected a passive role and has chosen, for better or worse, to participate actively in all aspects of the case. Indeed, the law confers upon that defendant "certain specific rights to have his [or her] voice heard” (McKaskle v Wiggins, 465 US 168, 174):
"The pro se defendant must be allowed to control the organization and content of his [or her] own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.” (Id., at 174.)
*245 In the present case, the trial court — although not required to do so (see, People v Mirenda, 57 NY2d 261, 264)— allowed the defense to flexibly fashion the roles of the pro se defendant and standby counsel. Thus to the extent standby counsel joined in the proceedings without defendant’s protest, it may be presumed that defendant waived the opportunity to personally execute the particular function (see, McKaskle v Wiggins, 465 US, at 182). On this record, however, that presumption may not be invoked with respect to the sidebars.
Indisputably, a defense representative, acting as counsel, was entitled to attend sidebars. While the People argue that standby counsel’s appearances at the conferences reflected the "division of labor” chosen by defendant, and that the trial court could not have known that defendant wished to participate, those claims are belied by defendant’s specific request to be present. On this record, the logical conclusion is that the division of labor, at least in connection with sidebar conferences, was imposed, not chosen.
We also reject the argument that defendant’s claim is unpreserved. The People fault defendant for "dropping] the subject without further discussion” after the court announced its ruling denying defendant’s request to attend sidebars. However, defendant’s specific application and the court’s equally specific ruling were sufficient to preserve the issue for appeal (see, CPL 470.05 [2]).
Moreover, at the close of the People’s case, defendant again expressed an interest in the sidebars. Acknowledging the court’s previous ruling that he could "not attend[ ] bench conferences” — which the Judge confirmed — defendant requested that the sidebars at least be recorded. Defendant’s acquiescence in the court’s unequivocal preclusion order, and his attempt to salvage what he could by seeking to have the conferences transcribed, cannot be deemed a waiver of the issue.
The right to appear pro se exists, in part, "to affirm the dignity and autonomy of the accused” (McKaskle v Wiggins, 465 US, at 176-177). Those values are threatened when a defendant who has assumed the risks inherent in self-representation is arbitrarily denied, despite specific request, the opportunity to attend sidebar discussions. Additionally, to the extent sidebars are conducted in the jury’s presence, there may be a danger that the "jury’s perception that the defendant is representing himself [or herself]” will be destroyed (id., *246 at 178). Of course, the right to attend sidebars is no broader than the right to self-representation itself, which may within an appropriate exercise of discretion be denied or divested (see, People v McIntyre, 36 NY2d, at 17-18). Here, however, the trial court advanced no reason for its refusal to permit defendant to attend sidebars. In these circumstances, we conclude that defendant’s State constitutional right to self-representation was violated.
In light of this conclusion, we need not consider defendant’s alternative arguments.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.
Order reversed, etc.

 While the 1777 and 1821 State Constitutions merely provided that the accused "shall be allowed counsel” (NY Const art XXXIV [1777]; NY Const, art VII, § 7 [1821]), the explicit right to "appear and defend in person” was added in 1846 (NY Const, art I, § 6), and has been retained in our Constitution ever since.