**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**David Bruce McDERMOTT II,**
**Defendant–Appellant.**

Nos. 94–5101, 94–5102.

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 1995.

Stephen C. Lewis, U.S. Atty., and Allen J. Litchfield, Asst. U.S. Atty., Tulsa, OK, for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, and James P. Moran, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

Before ANDERSON and BALDOCK, Circuit Judges, and BROWN,† District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

David Bruce McDermott II appeals his conviction on charges of engaging in a continuing criminal enterprise and interstate travel in aid of unlawful activity. He makes the following arguments:[1] (1) The district court violated his Sixth Amendment right of self-representation by refusing to let him participate in bench conferences when he was proceeding pro se with standby counsel; (2) he was subjected to double jeopardy by being criminally prosecuted after the government had filed civil forfeiture proceedings against him to which he had responded; (3) the district court abused its discretion by admitting allegedly irrelevant and prejudicial testimony that Mr. McDermott had threatened to kill a woman after she called him a pothead and a drug dealer; (4) the district court abused its discretion by denying him a mistrial after a government witness testified that a codefendant had been on probation; and (5) the evidence was insufficient to show that Mr. McDermott had exercised the necessary supervisory or managerial role for a conviction under the continuing criminal enterprise statute.

Because we conclude that Mr. McDermott's Sixth Amendment right to self-representation was violated, but that the evidence was sufficient to sustain the conviction, we reverse the conviction and remand for a new trial.

---

† Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. Mr. McDermott moved to proceed pro se with assistance of counsel on direct appeal, and we denied his request. Briefs were filed on his behalf by his counsel from the Federal Public Defender's office. Mr. McDermott also submit-

**BACKGROUND**

On April 23, 1993, law enforcement officials executed search warrants at the residence and business premises of David Bruce McDermott II, in Broken Arrow, Oklahoma. The next month, federal authorities seized Mr. McDermott's pickup truck and boat, and in a letter dated July 2, the FBI notified him that it was proceeding administratively to forfeit the property on grounds that it had been used to transport a controlled substance, was furnished or intended to be furnished in exchange for a controlled substance, or represented proceeds of a drug transaction, in violation of 21 U.S.C. §§ 881(a)(4) and (a)(6).

Mr. McDermott subsequently sent the FBI a letter with an affidavit of indigency, asserting claims to the pickup and the boat, to stop the administrative forfeiture and force the filing of a judicial forfeiture. On August 19, the FBI in Tulsa accepted cost bonds from Mr. McDermott, and on October 5, the government filed a civil complaint for forfeiture in rem. On November 2, Mr. McDermott answered and demanded a jury trial.

The next day, November 3, 1993, a federal grand jury in the Northern District of Oklahoma indicted Mr. McDermott, together with Lewis Stacy Lacy, Juan Antonio Mata, and Jaime Javier Mata. Mr. McDermott was charged with continuing criminal enterprise; conspiracy to possess with intent to distribute, and conspiracy to distribute, 100 kilograms or more of marijuana; and travel in interstate commerce with intent to promote, manage, establish, and facilitate distribution of marijuana. The conspiracy count also alleged that Mr. McDermott's pickup and boat were subject to criminal forfeiture pursuant to 21 U.S.C. § 853.

On November 23, on the government's motion and over Mr. McDermott's objection, the civil forfeiture case was stayed pending the outcome of the criminal case.

---

ted his own briefs, but to the extent that he raises additional issues, we do not address them, invoking our policy of addressing on direct appeal only those issues raised by counsel. *United States v. Coleman*, 9 F.3d 1480, 1487 (10th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 578 (1994).

On December 28, Mr. McDermott moved in the criminal case to proceed pro se, with his retained attorney acting as standby counsel. At the pretrial conference, his lawyer, Stuart Southerland, advised the court that there was no animosity between him and Mr. McDermott, but Mr. McDermott wanted to represent himself. The court granted the motion, but after the government objected to Mr. McDermott's full participation, the court ruled that he would not be allowed to participate in bench conferences, the jury instruction conference, or "the purely legal matters" of the case.

On the first day of the criminal trial, Mr. McDermott moved for dismissal on double jeopardy grounds, and the motion was denied. The government then put on twenty-eight witnesses. Of those, eight were business people testifying either to Mr. McDermott's cash purchases from them or, in one case, of the witness's equipment purchase from Mr. McDermott; three testified concerning records of 262 phone calls placed from Mr. McDermott's phone to various Mata family phone numbers in Texas; and three offered testimony concerning a controlled purchase by a government operative of a pound of marijuana from one of Mr. McDermott's alleged coconspirators, Billy Miller, and the subsequent laboratory tests on the substance.

One witness, Sharla Doss, testified that during an argument she had with Mr. McDermott concerning her love life, she called him a pothead and a drug dealer, and he threatened her life.

Of the remaining thirteen witnesses, who provided key testimony about their direct knowledge of Mr. McDermott's drug activities, at least eleven testified under grants of immunity. Seven also received pretrial diversion; three had plea bargains; and one, serving a twenty-year sentence, was told his cooperation would be reported to appropriate authorities.

On January 26, after a six-day trial, the jury convicted Mr. McDermott on the continuing criminal enterprise and interstate travel counts and found that his boat and pickup were subject to criminal forfeiture.

About two months later, the court sentenced Mr. McDermott and signed an order of criminal forfeiture. Mr. McDermott subsequently moved to dismiss the civil forfeiture case, and the government opposed dismissal until the criminal forfeiture was final, at which point the government itself sought and was granted dismissal of the civil proceeding.

## DISCUSSION

### I. *Self Representation*

■ Defendants have a Sixth Amendment right to conduct their own defense, subject to conditions not pertinent to this case. *Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975); *see also McKaskle v. Wiggins,* 465 U.S. 168, 178, 104 S.Ct. 944, 945, 79 L.Ed.2d 122 (1984). It is undisputed that Mr. McDermott timely and unequivocally asserted that right, together with a request for standby counsel to assist. Def.'s Motion filed Dec. 28, 1993, R. Vol. I, tab 46.

At pretrial on January 7, 1994, the district court broadly granted Mr. McDermott's motion, but imposed a critical exception. The court ruled that Mr. McDermott would not be permitted to be present at bench conferences. The ruling recognized Mr. McDermott's objection to that ruling and, by its terms, precluded the need for any renewal of the objection:

> MR. McDERMOTT: Your Honor, are you telling me that I shall not be allowed at a certain type of in-camera hearing?

> THE COURT: No, what I'm saying is you will not be allowed at the bench conferences, you will not be allowed at instruction conference. You will not address the purely legal matters, but you will be able to represent yourself on all other matters and you can communicate through your counsel on those matters. And the Court grants an exception redundantly under the Federal Rules to my ruling, because I take it that you object to the limitations I have placed on you, but those will be the limitations.

R. Vol. VI at 25.[2]

The reason given by the court for this restriction was that Mr. McDermott was not equipped to handle purely legal matters and bench conferences centered on them:

> THE COURT: Well, the bench conferences issues, to begin with those will deal with evidentiary issues, they will deal with the Federal Rules regarding criminal procedure. Those are not matters within the knowledge of Mr. McDermott and I think on all such issues his attorney should be involved and his attorney can communicate with Mr. McDermott because we're dealing in those conferences strictly with the Federal Rules of Evidence, and Mr. McDermott is not schooled in those.
>
> At the instruction conference we're dealing with the esoterics of criminal cases, instructions of courts to juries on criminal cases, and it's my feeling that counsel is more appropriate for those proceedings than is the defendant.
>
> I don't mean to unduly restrict you, Mr. McDermott, but we're going to restrict you from matters that are pure law, that is dealing with Federal Rules, federal instructions to juries, we will strict [sic] those to your lawyer and he can communicate those to you.

R. Vol. VI at 24.

It is important to note that the court gave no other reasons for excluding Mr. McDermott, including such matters as security considerations or any suggestion that Mr. McDermott would not abide by the necessary procedures or protocol of the court. The Supreme Court has made it clear that mere lack of familiarity with procedural and evidentiary rules is irrelevant, and this court has recently emphasized the point. *Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541; *United States v. McKinley*, 58 F.3d 1475, 1481 (10th Cir.1995).

At trial, held from January 18 through January 26, 1994, Mr. McDermott was in fact barred from thirty bench conferences.[3] Some of these bench conferences addressed only minor procedural issues or matters concerning codefendants. But others concerned, inter alia, Mr. McDermott's motion for a judgment of acquittal, his motion for mistrial because of the admission of Sharla Doss's death threat testimony, multiple government objections to the substance and manner of Mr. McDermott's cross-examination, the admissibility against Mr. McDermott of hearsay testimony by his alleged coconspirators, Mr. McDermott's objection to the admission of photos seized in the challenged search of his home and business, and his request for instructions to a witness not to mention guns found in Mr. McDermott's safe.

■ Mr. McDermott contends that by barring him from participation in bench conferences, the court violated his right of self-representation. He cites no federal case which established a per se rule on the subject, and the scant directly relevant authority is distinguishable factually. The closest cases are *Oses v. Massachusetts*, 961 F.2d 985 (1st Cir.) (per curiam), *cert. denied*, —— U.S. ——, 113 S.Ct. 410, 121 L.Ed.2d 334 (1992), and *United States v. Mills*, 895 F.2d 897 (2d Cir.), *cert. denied*, 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). In *Oses*, the First Circuit held that the *combination* of three sets of errors, one of which was exclusion of the defendant but not standby counsel from bench conferences, violated the defendant's right of self-representation. The other errors cited by the court consisted of forcing the defendant to conduct his defense at one point in leg irons and shackles, and at another point gagging the defendant in front of the jury, plus sarcastic, damaging comments by the judge, and the judge's unwillingness to curb the prosecutor's rhetorical excesses. *Oses*, 961 F.2d at 986.

In *Mills*, the Second Circuit found *no* violation of the Sixth Amendment when the defendant was excluded from sidebar confer-

---

**2.** As the excerpt from the record indicates, the court also ruled that Mr. McDermott would not be allowed to participate in jury instruction conferences. However, he was, in fact, allowed to participate when the time came. Thus, the point is not in issue.

**3.** After the second bench conference of the trial, Mr. McDermott asked: "Your Honor, at any point in time will I have a chance to review word for word the transcript of what was said up there?" The court replied, "You may confer with counsel." R. Vol. X at 31.

ences at which his standby counsel participated. The circuit reasoned that during the first half of the trial the defendant waived his right to participate, and during the remainder of the trial (approximately three days) the apparently few instances of exclusion did not constitute "a substantial violation of [the defendant's] Faretta rights." *Mills*, 895 F.2d at 904. Citing the tests set out in *Wiggins*, the circuit panel concluded that taking the trial as a whole Mills had "a fair chance to present his case in his own way." *Id.* at 905.[4]

At the outset of our analysis here, we reject the government's argument that Mr. McDermott's counsel was transformed into hybrid counsel (going from adviser/helper to representative) by a vacillating and acquiescent Mr. McDermott. This transcript leaves no doubt about Mr. McDermott's role, and the consistency of that role vis-a-vis that of his standby counsel during trial. McDermott in fact conducted his defense. His standby counsel, Mr. Southerland, did nothing more than what standby counsel might be expected to do: consult, make some objections, help with the admission and admissibility of exhibits, and make some motions. The Supreme Court makes clear in *Wiggins* that:

> *Faretta* rights are ... not infringed when standby counsel assists the *pro se* defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure. In neither case is there any significant interference with the defendant's actual control over the presentation of his defense.

*Wiggins*, 465 U.S. at 183, 104 S.Ct. at 953.

Mr. McDermott made his own opening and closing arguments to the jury, conducted his own cross-examination of every government witness, and planned and pursued his own defense through an accountant called by him

as an expert witness. He also argued some major motions outside the jury's presence and handled the admission of defense exhibits with procedural help from Mr. Southerland and the court. In short, there is no record support for the proposition that Mr. McDermott gave up control over his own defense except to the extent he was involuntarily excluded from sidebar.

In *Wiggins*, the Court stated that: "In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177, 104 S.Ct. at 950. The Second Circuit relied heavily on this principle in *Mills*, and we would have little trouble finding no violation of McDermott's *Faretta* rights if no more specific mandate existed. After all, Mr. McDermott does not allege that he would have done anything differently than Mr. Southerland did at sidebar, or that any prejudice resulted, or that there was any failure of communication between him and Mr. Southerland about the content or strategy of sidebar discussions or motions. The court even encouraged such communication. McDermott's objection is based on principle, not specific content or result.

But the Supreme Court was more pointed. It articulated the following rules which, of course, constrain our review:

> First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel *to make* or substantially interfere with any *significant tactical decisions*, or to control the questioning of witnesses, *or to speak instead of the defendant on any matter of importance*, the *Faretta* right is eroded.

> Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is im-

4. One state court has held that a defendant's right to self-representation under the state constitution includes the right to attend sidebar conferences. *People v. Rosen*, 81 N.Y.2d 237, 597 N.Y.S.2d 914, 916–18, 613 N.E.2d 946, 948–50 (1993).

portant in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy. In related contexts the courts have recognized that a defendant has a right to be present at all important stages of trial.

\* \* \* \* \* \*

*Faretta* rights are adequately vindicated in proceedings outside the presence of the jury *if the pro se defendant is allowed to address the court freely on his own behalf* and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.

*Wiggins*, 465 U.S. at 178, 104 S.Ct. at 951 (footnotes omitted) (emphasis added).

The second item listed by the court—preservation of the jury's perception that the defendant is representing himself—was not violated in the context of McDermott's whole trial. He was so visibly in charge of his defense that Mr. Southerland's trips to the bench for what were obviously technical matters would not have destroyed Mr. McDermott's "dignity and autonomy." This is especially so where McDermott largely allocated the primary responsibility for technical objections and assistance with the technicalities of evidence to Mr. Southerland throughout the trial.[5]

It is the first of the court's admonitions which detains us. As the passage quoted above explains, standby counsel may not, over the defendant's objection, "make or substantially interfere with any significant tactical decisions ... or ... speak instead of the defendant on any matter of importance...." *d.* at 178, 104 S.Ct. at 951. That occurred here.

Of course, the Court's language seems to stop short of a per se rule when it states that such events only "erode" *Faretta* rights. "Erode" is not a synonym for "violate." Thus, the cases become fact-specific, and some minor incursions, as in *Mills*, will fall short of a Sixth Amendment violation. However, unlike the situation in *Mills*, we cannot say that McDermott's exclusion, over his objection, from thirty bench conferences during a six-day trial was an insignificant incursion on his *Faretta* right. Accordingly, we must grant a new trial. We do so reluctantly because the district court was overall a model of patience and accommodation where Mr. McDermott's self-representation was concerned, and by due process standards the trial was fair, and any error relative to most other principles would be harmless. But harmless error analysis does not apply to the Sixth Amendment right in question.[6] *Wiggins*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

Our decision to grant a new trial does not end our appellate review. The double jeopardy claim requires our attention, and the law of this circuit compels us to review claims of insufficient evidence prior to remanding for a new trial because of procedural error. *United States v. Haddock*, 961 F.2d 933, 934 (10th Cir.1992). We turn, then, to an examination of these issues raised by Mr. McDermott.

## II. *Double Jeopardy*

The Double Jeopardy Clause provides three-pronged protection: against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *United*

---

5. This was not invariably the case. For example, when counsel for codefendant Tony Mata sought a mistrial because of a witness's remark concerning Mr. Mata's criminal record, and the court subsequently asked the lawyers to research and argue the issue the following week, Mr. McDermott asked if the hearing was to be "a lawyer thing only." When the judge said no and allowed him to attend, Mr. McDermott argued his own motion for severance.

6. Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

*Wiggins*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

States v. Bizzell, 921 F.2d 263, 266 (10th Cir.1990). Mr. McDermott argues that his criminal conviction following the institution of civil forfeiture proceedings subjected him to multiple punishments for the same offense.

The government makes several counter arguments, including that jeopardy never attached in the civil proceedings. This is dispositive.

■ The courts do not appear to agree on when jeopardy attaches in civil administrative and judicial forfeiture proceedings.[7] Mr. McDermott argues that jeopardy attached when his property was seized or when he filed his administrative claim and/or his answer in the judicial proceeding. He has not pointed us to any decisions, however, and we are aware of none, that hold that jeopardy attaches when property is seized. Nor do we consider the mere filing of an administrative claim sufficient to trigger jeopardy, at least where that act converts the proceeding to a judicial one with opportunity for hearing.[8]

Mr. McDermott has asserted that he was placed in jeopardy of double punishment and does not appear to be arguing that he was subjected to double prosecution. Admittedly, once double jeopardy analysis was expanded from the criminal to the civil context, the distinction between these two prongs blurred significantly. But whether we analyze Mr. McDermott's argument under only one prong or both, he loses. We have previously held that for purposes of multiple prosecution analysis, jeopardy did not attach in an administrative debarment proceeding before the adjudicative hearing stage. See Bizzell, 921 F.2d at 266. We now hold that jeopardy cannot attach any earlier for multiple punishment purposes, at least where a defendant does not settle a case and thus incur civil "punishment" before an adjudicative hearing. See United States v. Ursery, 59 F.3d 568, 570–73 (6th Cir.1995) (jeopardy attached before trial in civil forfeiture case when court entered consent judgment). This civil proceeding never got to a hearing or a settlement, so jeopardy cannot have attached. The criminal case, therefore, was not double jeopardy.

### III. Admission of Sharla Doss's Testimony

■ Mr. McDermott contends that the district court abused its discretion in admitting testimony of Sharla Doss regarding a death threat she says Mr. McDermott made against her. He argues that under Fed. R.Evid. 404(b),[9] the extrinsic acts testimony was not probative of any issue before the court, not offered for any proper purpose, and highly prejudicial, and the court improperly admitted it without a limiting instruction.

---

7. Some courts have held or suggested that jeopardy might attach at some point before entry of a final judgment. See, e.g., United States v. Barton, 46 F.3d 51, 52 (9th Cir.1995); United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.), cert. denied, — U.S. —, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); United States v. Sanchez–Escareno, 950 F.2d 193, 203 (5th Cir.1991), cert. denied, — U.S. —, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992); United States v. Messino, 876 F.Supp. 980, 981–82 (N.D.Ill.1995). Others have held that jeopardy does not attach until there is a final administrative action or an adjudication of civil liability, or until the final judgment of forfeiture is entered. See United States v. Park, 947 F.2d 130, 135 (5th Cir.1991); Ragin v. United States, 893 F.Supp. 570, 574 (W.D.N.C.1995); United States v. Tamez, 881 F.Supp. 460, 466 (D.Wash.1995); United States v. Stanwood, 872 F.Supp. 791, 798 (D.Ore.1994); United States v. McCaslin, 863 F.Supp. 1299, 1305 (W.D.Wash.1994). Cf. Oakes v. United States, 872 F.Supp. 817, 827–29 (E.D.Wash.1994) (holding that jeopardy attached when defendant in criminal case, which contained no criminal forfeiture count, entered plea agreement calling for forfeiture of property disputed in civil proceeding).

8. We need not and do not decide here when, if ever, jeopardy attaches in an uncontested administrative forfeiture, which occurs automatically without a hearing after the required notice is given and 20 days pass.

9. Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

■ We review a district court's admission of evidence under Rule 404(b) for abuse of discretion. *United States v. Grissom*, 44 F.3d 1507, 1513 (10th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 1720, 131 L.Ed.2d 579 (1995). That discretion is not abused, and a defendant is presumed not to have been subjected to undue prejudice, if four requirements are met: (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the trial court determines under Fed.R.Evid. 403 that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the court, if requested, provides an appropriate instruction limiting the jury's use of the evidence to its proper purpose. *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *Grissom,* 44 F.3d at 1513; *United States v. Birch*, 39 F.3d 1089, 1094 (10th Cir.1994).

■ Although we have held that the government must precisely articulate a proper purpose for the evidence and the trial court must specifically identify the proper purpose for which it is admitted, *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986), the failure of the government or the court to do so will not be deemed harmful if the evidence's proper purpose is apparent from the record and the evidence was correctly admitted. *Birch,* 39 F.3d at 1094.

We look first at the specific evidence admitted. Ms. Doss testified about an altercation that occurred two weeks before the search of Mr. McDermott's home, when she was moving out from living with her ex-fiance, and Mr. McDermott was there helping him with some work. She testified that McDermott and she argued over the fact that she had slept with a third man, and McDermott "accused me of things and told me that I would get hurt. He had higher powers than himself and he would have me dead." R. Vol. XIII at 660. She filed a police report at the time, which was admitted into evidence, and in her testimony she referred to the report, saying, "As the report states, I called him a pothead and a drug dealer and he told me to leave my own house . . . . [H]e

did say that he would have somebody hurt me . . . . [H]e threatened my life." *Id.* at 660–62.

The police report itself recounts the incident as follows:

> The victim had come from work and Dave [McDermott] started accusing the victim of cheating on her fiance. Dave was being verbally abusive and kept poking the victim in the chest with his finger and telling her to get out of the house. The victim told Dave that he was nothing but a pothead and a drug dealer. Dave then told the victim that if she ever told anyone that she would get hurt. Dave said that he had connections bigger than himself and that if she said anything she would end up dead.

R. Vol. I, Tab 7.

The government never specifically stated the purpose for which it was offering the evidence or the precise inferences to be drawn from it. The court initially prohibited the evidence under Rule 403, R. Vol. X at 31, then reconsidered, saying it appeared to be a direct threat to a witness. R. Vol. XII at 394. Counsel for one of the codefendants argued that it was not in retaliation for any testimony Ms. Doss might give, to which the court replied that this could be brought out on cross-examination. *Id.* at 395.

The government argues on appeal that the threat, under the circumstances in which it was made, tends to prove that Mr. McDermott was part of a criminal organization or group with some connection to drug activity. The government argues that the testimony was admissible to show Mr. McDermott's knowledge of and intent and opportunity to be a part of a drug conspiracy, and his identity as a conspiracy member. These are proper purposes in the context of the case at bar, as would be the purpose stated by the court: to show a threat made to a witness. But it is not entirely clear that Mr. McDermott viewed Ms. Doss as a potential witness at the time. This link was stronger in the police report than in her testimony on the stand, and the district court also seemed concerned that the actual testimony proved less than what the court had anticipated. *See* R. Vol. XIII at 665.

Even if we agree that there is some relevance to this testimony, however, we cannot escape the conclusion that the district court was right the first time: whatever probative value the testimony had was substantially outweighed by its potential for unfair prejudice. It was error to admit it.

IV. *Sufficiency of Evidence of Continuing Criminal Enterprise*

 Finally, Mr. McDermott challenges the sufficiency of the evidence to sustain his continuing criminal enterprise conviction.

We review de novo whether sufficient evidence exists in the record to support a conviction. *United States v. Pike,* 36 F.3d 1011, 1012 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995). The standard is "whether any rational factfinder, viewing the evidence and reasonable inferences therefrom as a whole in the light most favorable to the prosecution, could find the essential elements of the crime beyond a reasonable doubt." *Pike,* 36 F.3d at 1012 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

 To be guilty of engaging in a continuing criminal enterprise under 21 U.S.C. § 848, a defendant must have acted in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor, or any other position of management. 21 U.S.C. § 848(c)(2)(A). The government does not have to show that a defendant organized, supervised, or managed the five people simultaneously, as long as the defendant did so during the life of the criminal enterprise. *United States v. Cestnik,* 36 F.3d 904, 911 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1156, 130 L.Ed.2d 1113 (1995).

 Mr. McDermott contends that he was not an organizer, supervisor or manager of five other people, that the government showed no more than buyer-seller relationships at most. He is correct that proof of a buyer-seller relationship alone is not enough to establish a managerial role, *id.* at 912, but additional evidence of formal or informal authority or responsibility respecting a purchaser's conduct may suffice. *Id.*

Even if we set aside any evidence concerning Mr. McDermott's sales of marijuana to various dealers, we find ample evidence of Mr. McDermott's organizing, supervisory, and/or managerial role just in his hiring of various people to perform tasks in furtherance of his drug operation.

The evidence showed that he paid Robert Nelson, Christy Fielding, Mike Grogg, Billy Miller, Bobby Collinson, Joel Bean and Stacy Lacy to transport marijuana from Texas to Oklahoma and/or to allow use of their or their relatives' homes for storage and repackaging of drug shipments. Mr. Nelson also delivered drugs to Mr. McDermott's buyers; Ms. Fielding collected payments for him; Mr. Grogg helped Mr. McDermott carry $18,000 to Texas to pay a supplier. Mr. McDermott planned and went along on most, if not all, of the Texas trips, and helped to break up and repackage the marijuana into smaller packages at the storage houses. The evidence is more than sufficient.

**CONCLUSION**

For the reasons stated above, we hold that the evidence was sufficient to sustain Mr. McDermott's conviction, and that Mr. McDermott was not twice placed in jeopardy in violation of the Constitution; but that Mr. McDermott is entitled to a new trial because his Sixth Amendment right to self-representation was violated. AFFIRMED in part, and REVERSED and REMANDED for a new trial.