PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4755
_____

UNITED STATES OF AMERICA

v.

PRINCE ISAAC
a/k/a Connect
a/k/a Connetti
a/k/a Boo

Prince Isaac,
                                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-05-cr-00576-001)
District Judge:  Honorable Juan R. Sanchez
_____

Argued April 28, 2011

Before: SLOVITER, GREENAWAY, JR. and ROTH,
Circuit Judges

(Opinion Filed: August 23, 2011)
_____

Thomas A. Dreyer, Esq.   (Argued)
Suite 106
6 Dickinson Drive
Building 100
Chadds Ford, PA 19317

   Attorney for Appellant

Bernadette A. McKeon, Esq.
Mark S. Miller, Esq.
Robert Zauzmer, Esq.   (Argued)
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA l9l06

   Attorneys for Appellee

_____

OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

Among the various issues appellant Prince Isaac raises in his challenge to his conviction and sentence is one that requires us to consider once again the parameters of a criminal defendant's right to represent himself.  Prince Isaac was convicted by a jury of fifteen counts arising out of his role as the organizer of a drug trafficking ring in Lancaster, Pennsylvania.  Isaac contends that he was denied the right to represent himself when he did not attend two sidebar conferences concerning jury instructions and that the District Court erroneously instructed the jury as to the continuing criminal enterprise ("CCE") count, which carried a life

2

sentence.  Isaac also contends that the District Court made several sentencing errors.  We address each argument in turn.[1]

## I.

On April 5, 2009, a grand jury issued a Second Superseding Indictment charging Isaac with 25 counts.  At trial, the Government introduced evidence that Isaac and his half-brother Shamek Hynson founded, organized, and controlled a drug trafficking organization in Lancaster, Pennsylvania.  Isaac and Hynson employed several others to help package and sell crack cocaine and heroin.  As part of this organization, Isaac used straw purchasers to obtain guns, which he later sold.  Guns were also used to protect the operation.  The Government offered testimony of several coconspirators linking Isaac to several specific cocaine and heroin transactions.  Based on this evidence, Isaac was ultimately convicted of fifteen of the charged counts.[2]

Each count and the corresponding sentence are as follows:  life imprisonment for engaging in a CCE in violation of 21 U.S.C. § 848 (count 2), 360 months on each of four counts of distribution of heroin and/or crack in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (counts 3, 6, 9 and 11), 120 months on each of four counts of distribution of crack in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (counts 5, 7, 8, and 10), 480 months for employment of a minor to distribute drugs in violation of  21 U.S.C. § 861 (count 12), 480 months for distribution of crack within 1000 feet of a public park in violation of 21 U.S.C. § 860(a) (count 14), 240 months on each of two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1) & (2) (counts 23 and 24), and a 10 year mandatory minimum consecutive sentence for

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

[2] The jury originally convicted Isaac of 19 counts.  Four counts were set aside by the District Court following Isaac's motion for judgment of acquittal.

possession of a firearm in furtherance of drug distribution in violation of 18 U.S.C. 924(c) (count 17). All sentences were to run concurrently with the CCE life imprisonment count with the exception of count 17, possession of a firearm, which by statute must run consecutively to the life imprisonment.[3] *See* 18 U.S.C. § 924(c)(1)(D)(ii).

In reviewing the panoply of challenges raised by the defendant, many of which coalesce into the claim that a life sentence is a draconian penalty to impose on a young man who embarked on his criminal activity when he was 15 years old, it is necessary to keep in mind that Isaac formed and led a violent organization that spewed guns, heroin and crack onto the streets of Lancaster for years, shooting and intimidating the population as members of the organization proceeded through one criminal activity after another. We are not unaware that the sentence imposed was significant, particularly in light of Isaac's youth—Isaac was just twenty to twenty-one years old at the time of the offense conduct and twenty-four years old at sentencing.[4] Thus, as we customarily do, we treat each of Isaac's arguments on appeal with great attention.

## II.

### A. Sixth Amendment Right to Self-Representation

Isaac contends that his Sixth Amendment right to self-representation was violated when, while proceeding pro se, he was not present at two sidebar conferences held during the jury charge. Isaac was represented by counsel until the close of the Government's case on the eighth day of trial when,

---

[3] Although Isaac was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 826 (count 1), no sentence was imposed because Isaac was also convicted of CCE (count 2).

[4] As the Government described it at argument, the sentence in this case was "very, very severe." Oral Argument at 35:10.

after a lengthy colloquy with the District Judge, Isaac knowingly waived his right to counsel. Isaac's appointed trial counsel, Attorney Geoffrey Seay, was then appointed standby counsel. Isaac chose not to provide any evidence in his defense, and therefore represented himself only during closing and at sentencing. Ostensibly for security reasons, Isaac was not permitted to move about the courtroom during closing, although he was permitted to stand at his desk. Subsequently, a charging conference was held at which Isaac was permitted to and indeed did raise objections to the proposed charge, none of which are relevant on appeal. Thereafter, the Judge delivered the charge to the jury.

At the close of the instructions, the Judge asked the attorneys, including both Isaac and his standby counsel by name, whether there was anything they wanted to discuss at sidebar regarding the charge. Isaac did not indicate that he had an objection, but the prosecutor did. A sidebar was held. Attorney Seay attended, Isaac did not, but Isaac did not object to this arrangement. After the sidebar, the Judge gave a limiting instruction, directing the jury to consider testimony regarding Isaac's alleged possession of a firearm only for the purpose of determining whether the acts were in furtherance of the alleged conspiracy—and not for any other purpose. The Judge also reiterated the CCE charge. The Judge then held another brief sidebar, where nothing of substance was discussed, and then dismissed the jury for deliberations.

Based on these facts, Isaac contends that his inability to participate in the two sidebar conferences violated his right to self-representation. It is well settled that the Sixth Amendment guarantees a criminal defendant the right to proceed pro se equal to its guarantee of the right to counsel. *Faretta v. California*, 422 U.S. 806, 820 (1975). In order for the right to self-representation to be effective, that "right must impose some limits on the extent of standby counsel's unsolicited participation." *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984). The Supreme Court has identified two principal limitations. "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. . . . Second, participation by standby counsel

5

without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.* at 178. The Supreme Court has cautioned that "[i]n measuring standby counsel's involvement against [these standards], it is important not to lose sight of the defendant's own conduct. A defendant can waive his *Faretta* rights. Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable. . . . [A] *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably." *Id.* at 182.

Other circuits have applied these principles in cases where standby counsel participates at sidebar in lieu of the pro se defendant. In *Lefevre v. Cain*, 586 F.3d 349, 355 (5th Cir. 2009), the Fifth Circuit held that when a pro se defendant, who was shackled behind the desk, failed to object to standby counsel's participation in several sidebar conferences, there was no *Faretta* violation because the defendant acquiesced in standby counsel's participation in lieu of the defendant's own. The court reasoned that because the defendant "had the opportunity to object to his exclusion, his absence from the bench conferences was not involuntary." *Id.* Similarly, in *United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990), the Second Circuit held that there was no substantial violation of *Faretta* in excluding the pro se defendant from the sidebar conferences before he voiced any objection to the procedure. We take guidance from these cases.[5]

---

[5] Conversely, we find the Tenth Circuit's decision in *United States v. McDermott*, 64 F.3d 1448 (10th Cir. 1995), easily distinguishable. There, the District Court flatly forbade the defendant from participating in bench conferences without citing any security concerns for doing so. *Id.* at 1451-52. In the end, McDermott was barred from attending thirty bench conferences. *Id.* at 1452. The Ninth Circuit's holding in *Frantz v. Hazey*, 533 F.3d 724, 744 (9th Cir. 2008), is also inapposite because in that case the defendant had no

6

Isaac contends that the earlier court-imposed limitation on his movement during his closing implicitly prevented or forbade him from attending the sidebar. This assertion is belied by the record. As noted, the Judge specifically asked Isaac by name if there was anything he wanted to discuss. Isaac raised no objection and acquiesced to standby counsel's participation in the conferences. Accordingly, Isaac waived his right to participate in the sidebar conferences; his constitutional right to proceed pro se was preserved.

### B. CCE Jury Instruction

Isaac contends that the CCE jury instruction was erroneous. The defendant failed to object to the instruction and, thus, a new trial can only be granted if the mistake constituted plain error. *See United States v. Gambone*, 314 F.3d 163, 182 (3d Cir. 2003). "[T]he relevant [plain error] inquiry . . . is whether, in light of the evidence presented at trial, the failure to instruct had a prejudicial impact on the jury's deliberations." *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993) (quotations omitted). An errant instruction constitutes plain error only if it produced a miscarriage of justice; that is, if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

In order to be convicted of CCE, a person must (1) be found to have violated a federal drug distribution felony, and (2) such violation must have been part of a continuing series of drug violations, which (A) was undertaken with five or more other persons whom the defendant organized, supervised, or managed, and (B) from which the defendant obtained substantial income or resources. 21 U.S.C. § 848(c).

Here, Isaac contends and the Government concedes that the District Court erred when instructing the jury as to

---

opportunity to object to his exclusion from a chambers conference.

7

which other counts would satisfy the first CCE element, violation of an underlying federal drug distribution felony. On several occasions, the District Court instructed that the underlying offenses charged in "Counts 1, 3, Counts 5 through 12 and Counts 14 through 17" would satisfy the predicate offense requirement for the CCE count. App. at 207. This was error. Counts 15 through 17 should not have been included in the instruction because Isaac was not charged in count 15 and counts 16 and 17 were both Section 924(c) firearm offenses which cannot serve as predicate drug violations for a CCE offense.

Our inquiry therefore is whether this error affected the integrity or result of the proceeding. In order to convict the defendant for CCE, the jury was only required to find that the defendant committed one of the predicate drug distribution offenses. The instructions made that clear. The jury did not limit its finding of guilt on the CCE count to specific predicate offenses. Instead, the jury found the defendant guilty of all nine drug distribution counts, easily satisfying the requirement and ensuring that there was no prejudicial impact.

Beyond that, the District Court made clear that the CCE conviction was contingent upon the jury's finding that Isaac engaged in a series of drug trafficking transactions. The Court initially stated that "[i]n effect, the Government has charged that the defendant has engaged in the business of trafficking in prohibited drugs on a continuing series -- serious, widespread supervisor and substantial basis." App. at 205. Moreover, the Court summarized the first element by instructing that the jury must find that "the defendant committed any of the offenses of conspiring to distribute controlled substances or distribution of controlled substances." App. at 206. That instruction necessarily excludes counts 15 to 17, which either do not involve the defendant or do not involve distribution. Accordingly, despite the erroneous references to counts 15 through 17, the charge as a whole made it clear that the CCE count was premised on an underlying drug distribution offense. The

8

error caused no prejudice and is not reversible under plain error review.

### C. Failure to File § 851 Notice

As outlined above, the District Court imposed 360 month concurrent sentences on each of counts 3, 6, 9, and 11—all drug distribution counts for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Typically, the statutory maximum for each such conviction is 20 years, or 240 months. 21 U.S.C. § 841(b)(1)(C). However, an enhanced statutory maximum of 30 years exists when the defendant has committed "a violation after a prior conviction for a felony drug offense has become final." *Id.* But this enhanced 30 year maximum is only available if, before trial, the Government "files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1).

The Government concedes that no such information was filed and docketed and "thus [it] did not comply with the statutory requirements." Appellee's Br. at 53. Nevertheless, the Government contends that because Isaac did not object to the sentence, the Government's neglect should be reviewed for plain error. Several other circuits have held that plain error applies when a defendant fails to object to the lack of a § 851 notice because the notice requirement is not jurisdictional, but merely procedural. *See United States v. Lewis*, 597 F.3d 1345, 1347 (7th Cir. 2010); *United States v. Beasley*, 495 F.3d 142, 146 (4th Cir. 2007); *United States v. Dodson*, 288 F.3d 153, 161 (5th Cir. 2002).[6]

---

[6] In a non-precedential opinion, this court held similarly. *United States v. Johnson*, 93 F. App'x 416, 419-20 (3d Cir. 2004). However, under our Internal Operating Procedures only precedential opinions are binding on the court. 3d Cir. I.O.P. 5.7; 9.1.

Other courts, including our own, have held that the § 851(a) notice requirement is jurisdictional, and thus cannot be procedurally defaulted by a failure to object. *See United States v. Harris*, 149 F.3d 1304, 1306 (11th Cir. 1998) (courts lack jurisdiction to enhance a sentence unless the Government strictly complies with § 851's filing requirement); *United States v. Allen*, 566 F.2d 1193, 1196 (3d Cir. 1977) (failure to comply with § 851 pretrial filing requirement is a jurisdictional prerequisite to enhancement). *See also United States v. Baugham*, 613 F.3d 291, 296 (D.C. Cir. 2010) (noting that "[t]o penalize a defendant for not alerting the district court to its failure to alert him would pervert the statute and get it exactly backward"); *United States v. Severino*, 316 F.3d 939, 952 (9th Cir. 2003) (en banc) (Thomas, J., dissenting) ("§ 851(a) is not merely a procedural statute, the violation of which might lend itself to an examination under a plain error analysis"). Under this view, absent compliance with § 851, a sentencing court lacks authority to impose the enhancement and therefore plain error review is not the appropriate standard.

The Second Circuit has sidestepped the issue of whether plain error review should apply if the defendant fails to object to § 851 deficiencies. *United States v. Espinal*, 634 F.3d 655, 665 n.7 (2d Cir. 2011). We will do the same. We need not definitively decide whether plain error review should apply when a defendant neglects to object to the Government's failure to file a § 851 information because even assuming the more stringent plain error review applies, we find that the error was plain in this case.[7]

Under plain error review, a defendant will only prevail if there was an error that was both clear and affected the defendant's substantial rights, that is, it affected the outcome of the proceedings. Fed. R. Crim. P. 52(b); *Puckett v. United*

---

[7] We are particularly hesitant to definitively decide one way or another whether plain error applies because defense counsel does not brief the issue, depriving us of the benefits accompanying an adversarial response.

10

*States*, 129 S. Ct. 1423, 1429 (2009). If those requirements are met, the court of appeals has the discretion to remedy the error if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 129 S. Ct. at 1429 (internal quotations and alterations omitted).

One of the primary purposes of the § 851 notice requirement is to inform the defendant that the Government intends to seek an enhancement before the defendant decides whether to enter a guilty plea or go to trial so that the defendant can make an informed decision as to his or her option. *Lewis*, 597 F.3d at 1347; *Beasley*, 495 F.3d at 149; *Dodson*, 288 F.3d at 159-60.[8] Accordingly, courts that have applied the plain error standard to § 851 have focused on whether there was actual notice. These courts have held that the failure to file a § 851 notice does not prejudice the defendant's substantial rights when the defendant had actual notice of the Government's intent to seek an enhancement prior to the decision to go to trial or plead. *Lewis*, 597 F.3d at 1347; *Johnson*, 93 F. App'x at 419-20. *See also Beasley*, 495 F.3d at 149 (discussing the importance of filing the information before trial); *United States v. Ceballos*, 302 F.3d 679, 693 (7th Cir. 2002) (noting that defendant's actual, pretrial knowledge that prosecutor intended to seek enhancement permitted imposition of the enhancement).[9]

Nothing in the record indicates that Isaac had actual notice prior to trial. During the colloquy regarding Isaac's request to proceed pro se, which did not occur until the close of the Government's case-in-chief, the Court briefly noted that the statutory maximum could be increased from twenty to thirty years because of Isaac's prior conviction. The presentence report ("PSR") unquestionably discussed the

---

[8] The Government agrees that § 851's objective is "to give a defendant an opportunity to contest the accuracy of his prior convictions and to inform his decision on whether to plead guilty or proceed to trial." Appellee's Br. at 54 n.18.

[9] At argument, the Government agreed that pretrial notice was key to fulfilling the purposes of § 851.

enhanced penalties, but, of course, the PSR was not created until after trial. PSR ¶¶ 8, 149. Thus, Isaac had no actual pretrial notice. The only evidence of pretrial notice is the Government's assertion that "the prosecutor recalls that he provided Isaac with a Section 851 notice at a pretrial motions hearing." Appellee's Br. at 56. However, the Government concedes that "it does not appear in the record." *Id.*

Assuming the plain error standard applies in this case, the error here satisfies the plain error requirements because there is no record evidence that Isaac received pretrial notice, actual or otherwise, regarding the Government's intent to seek an enhancement. Isaac was prejudiced because he was not so-informed and therefore was deprived of the opportunity to consider the effect of the enhancement on his decision to go to trial—a substantial right enshrined by Congress.[10]

Our conclusion in this regard is buttressed by our characterization of the § 851 notice requirement in *United States v. Weaver*, 267 F.3d 231 (3d Cir. 2001). There, we noted, in no uncertain terms, that "[t]he requirements set out in § 851 are mandatory and a district court may not impose an enhanced sentence unless the defendant has been notified of the 'strikes' in compliance with these provisions." *Id.* at 246. Specifically, we noted that courts "continually emphasiz[e] the need for strict compliance with § 851(a)(1)'s filing and service requirements," because such requirements are "explicit in the statute." *Id.* at 247. *See also Severino*, 316 F.3d at 955 (Thomas, J., dissenting) ("[T]he government's

---

[10] We note that in addition to showing lack of actual notice, some courts have suggested that in order to satisfy the prejudice element of plain error review, a defendant must actually contest the validity of some of the prior convictions used to support the § 851 enhancement. *See, e.g.*, *Dodson*, 288 F.3d at 162. We are not convinced that such a showing is necessary given § 851's purpose of empowering the defendant to make an informed decision about whether to proceed to trial or plea, which may be affected particularly if the underlying convictions are valid.

failure to comply with the service provisions of § 851(a) deprived the district court of the authority to impose an enhanced sentence. In exceeding its statutory sentencing power, the district court necessarily committed plain error and vacation of the sentence is required.").

Because we conclude that the error in this case affected the fairness of the proceeding, we exercise our discretion to vacate the 360 month sentences imposed on counts 3, 6, 9, and 11, drug distribution counts for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C). We direct the District Court on remand to impose the otherwise applicable statutory maximum sentence of 20 years on each of those counts.[11] We are fully aware that this decision will not alter Isaac's overall sentence. Nevertheless, § 851 is not merely hortatory; it is important to hold the Government to the congressionally imposed requirements.

### D. Other Sentencing Claims

Isaac raises several other challenges to his sentence, none of which are meritorious. First, Isaac contends that it was error under the terms of 18 U.S.C. § 924(c)(1) to impose the 10 year mandatory minimum sentence for possession of a firearm in furtherance of a drug crime (count 17) as a consecutive sentence to the life imprisonment sentence. This argument is foreclosed by the Supreme Court's recent decision in *Abbott v. United States*, 131 S. Ct. 18 (2010), affirming this court's decision rejecting this precise argument. The Court held, "that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Id.* at 23.

Second, Isaac contends that two errors were made in calculating his criminal history points. Because Isaac did not

---

[11] This is the remedy Isaac seeks. He does not contend that the Government's failure to comply with § 851 should result in a new trial.

13

object to the District Court's criminal history calculation, we review for plain error. *United States v. Russell*, 564 F.3d 200, 206 (3d Cir. 2009). The PSR and the District Court concluded that Isaac had nine criminal history points, putting Isaac in criminal history category IV. Isaac rightly contends that pursuant to Guideline § 4A1.2(d)(2)(A) he should have received only two points, instead of three, for a September 21, 1999 drug offense that occurred when Isaac was only 15 years old. However, the error was completely harmless because even with the one point reduction, Isaac would remain in criminal history category IV and the same Guideline range would have applied.

Isaac's argument that the District Court erred in adding one criminal history point pursuant to § 4A1.1(e) of the Guidelines is also without merit. This provision required the addition of a point if the defendant committed the instant offense within two years of release from imprisonment (a so-called "recency point"). Last year, the Sentencing Commission deleted this provision, effective November 1, 2010. The Sentencing Commission did not make the amendment retroactive. Under statute and our precedent, we do not have the authority to reduce a final sentence based on non-retroactive amendments. *United States v. Thompson*, 70 F.3d 279, 281 (3d Cir. 1995). There was no error here, plain or otherwise.

Isaac contends that it was plain error for the District Court not to depart downward from criminal history category IV because it substantially overrepresents the seriousness of Isaac's criminal history. Isaac never moved for a downward departure on this ground. Even if he had, in contrast to determining whether a sentence is reasonable, appellate courts lack jurisdiction over the merits of a district court's discretionary decision not to depart downward from the Guidelines once it is determined that the district court properly understood its authority to grant a departure. *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004).

Finally, we reject Isaac's claim that the sentence was procedurally unreasonable. Notwithstanding the severity of the sentence and the defendant's youth, the record

demonstrates that the District Court meaningfully considered all of the relevant § 3553(a) factors.[12]

## III.

For the foregoing reasons, we will affirm the judgment of conviction on all counts. We also affirm the sentence as to all counts except counts 3, 6, 9, and 11, drug distribution counts for violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C). We vacate the sentences as to those counts and remand to the District Court to impose the otherwise applicable statutory maximum sentence of 20 years on each of those counts.

---

[12] We also reject Isaac's argument, raised in his pro se supplemental brief, that the evidence was insufficient to support his CCE conviction.