**UNITED STATES of America**

v.

**Prince ISAAC.**

**Criminal Action No. 05–576–01.**

United States District Court, E.D. Pennsylvania.

Signed May 16, 2014.

Mark S. Miller, Eric B. Henson, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

Prince Isaac, Philadelphia, PA, pro se.

Caroline A. Goldner Cinquanto, Geoffrey V. Seay, Philadelphia, PA, for Prince Isaac.

## MEMORANDUM

JUAN R. SÁNCHEZ, District Judge.

Defendant Prince Isaac asks this Court for a new trial pursuant to Federal Rule of Criminal Procedure 33 based upon newly discovered documentary evidence that the Government failed to disclose to him prior to trial. He asserts the Government's failure to turn over four exculpatory documents that were critical to his defense violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Alternatively, he argues this evidence meets the standard for a new trial based on newly discovered evidence under Rule 33. Though the evidence at issue was not disclosed prior to trial, upon review of the record, the Court is not persuaded there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The Court will therefore deny Isaac's motion.

## BACKGROUND

After a two-week jury trial, Isaac was convicted on September 21, 2007, of numerous federal offenses arising out of his involvement in a violent drug trafficking ring in Lancaster, Pennsylvania. Isaac was convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 1); engaging in continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 2); four counts of distribution of heroin and/or crack in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) (Counts 3, 6, 9, and 11); four counts of distribution of crack in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Counts 5, 7, 8, and 10); employment of a minor to distribute drugs in violation of 21 U.S.C. § 861 (Count 12); distribution of crack within 1000 feet of a public park in violation of 21 U.S.C. § 860(a) (Count 14); possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 17); and two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1) & (2) (Counts 23 and 24).[1]

---

**1.** Isaac was also convicted of four additional counts of witness tampering, but, in response

On November 17, 2008, this Court sentenced Isaac to a total of life imprisonment,[2] and the Court entered judgment in the case on November 26, 2008.[3]

On April 28, 2009, Isaac filed a motion for new trial.[4] Isaac asserts he should receive a new trial because the prosecutor violated *Brady* by not disclosing certain evidence either before or during his trial, or, alternatively, the newly discovered evidence meets the standard for a new trial under Rule 33. The evidence that forms the basis of his claims is: (1) undisclosed cell phone records for a phone belonging to Isaac; (2) investigation notes about a car stop involving Government witness Lindsay Colon indicating that charges were pending against Colon, (3) a witness statement signed by Lindsay Colon; and (4) a memorandum from a Lancaster police officer to the Pennsylvania Attorney General's Office recommending Government witness Tracy Ramirez be removed from the witness protection program.

Lindsay Colon, Isaac's girlfriend at the time of the relevant events, was one of the Government's main witnesses against Isaac. At trial, she testified to first-person accounts of interactions between Isaac, his coconspirator Shamek Hynson, unidentified drug purchasers, and herself. Her testimony was very important to Isaac's convictions; the Presentence Investigation Report for Isaac states that of the 135.2 grams of crack and heroine attributed to the conspiracy count, 85 .grams resulted from Colon's testimony. Presentence Investigation Report ¶ 47, *United States v. Prince Isaac*, No. 05–00576–01, September 8, 2008. During the trial, Colon testified that Isaac took a trip to South Carolina, leaving her with his cell phone and 28 grams of crack cocaine to sell to his existing customers on his behalf while he was gone; she stated she sold 20 of the 28 grams using Isaac's cell phone. Trial Tr. 2.128, 2.132, Sept. 11, 2007. Colon also testified (in a portion of her testimony unrelated to her account of Isaac's South Carolina trip) that Isaac's cell phone number was 717–203–3409. Trial Tr. 3.20, Sept. 12, 2007. Isaac asserts, and the Government does not dispute, that he traveled to South Carolina from approximately October 14–18, 2004. The crack cocaine Colon allegedly sold for Mr. Isaac via his cell phone during that time period formed the primary basis for the crack distribution offense charged in Count 5 [5] and also

---

to Isaac's post-trial motions for judgment of acquittal, the Court dismissed those counts on August 26, 2008, 2008 WL 3919353.

**2.** On July 8, 2009, Isaac was also sentenced to life imprisonment in an unrelated case in the Court of Common Pleas of Chester County, after he was found guilty of murder in the first degree. *See Commonwealth v. Prince Isaac*, No. CP–15–CR–0002120–2007, Docket at 4.

**3.** Isaac appealed his conviction and sentence. On August 23, 2011, the United States Court of Appeals for the Third Circuit affirmed Isaac's conviction on all counts and affirmed the imposition of a life sentence on Count 2, but vacated the sentences on four drug distribution counts (Counts 3, 6, 9, and 11) and remanded for resentencing with instructions

to impose a 20–year statutory maximum sentence, rather than an enhanced 30–year statutory maximum. *United States v. Prince Isaac*, 655 F.3d 148, 158 (3d Cir.2011).

**4.** The Court permitted Isaac's codefendant Shamek Hynson to join in this motion. The Court will address Hynson's motion by separate order.

**5.** Count 5 states "[i]n or about August 2004, in Lancaster, defendant Prince Isaac ... knowingly and intentionally distributed approximately 28 grams of a mixture and substance containing a detectable amount of cocaine base (crack) ... [i]n violation of Title 21, United States Code, Section § 841(a)(1), (b)(1)(B)." Second Superseding Indictment 15 (ECF No. 158). Even though the charge states "in or about August 2004," the parties

supported Isaac's other convictions. *See* Trial Tr. 114–16, Sept. 19, 2007 (Government's closing arguments).

Before trial, the Government provided Isaac with a copy of certain phone records for 717–203–3409 (Set 1), which were originally obtained by the Coatesville Police Department, and were passed to the City of Lancaster Police Department and then to the Drug Enforcement Administration (DEA) before being produced to Isaac. Set 1 is a record called a "frequency report" and includes information about the frequency, date range, total duration, and subscriber for each number dialed from that particular phone. Set 1 does not provide any information regarding incoming calls.

Following his trial in this case, the Chester County Assistant District Attorney (ADA) provided Isaac with a CD of documents concerning Isaac's state case. The CD also contained materials pertaining to this federal action that were provided to the ADA by the federal prosecutor in this case, some of which the Government had not previously produced to Isaac in this case. Among the previously undisclosed materials on the CD was a different record for the same telephone number to which Set 1 pertained, 717–203–3409 (Set 2). Set 2 also originated with Coatesville Police Department and passed to the Lancaster Police Department and then to the DEA, but was not produced to Isaac before trial. Set 2 reports every call made from and received by the cell phone, and, most importantly, shows that none of the 165 incoming calls from October 14–18, 2004, were answered, indicating Colon did not use this phone during Isaac's trip to South Carolina. Set 2 is the first piece of evidence underlying Isaac's motion for a new trial.

The second piece of evidence Isaac asserts warrants a new trial is a set of investigation notes regarding an incident involving Colon, which Isaac also found on the CD. These notes state that police stopped Colon while she was driving Isaac's car on November 17, 2004, and discovered thirty-eight bags of heroin, one bag of marijuana, two bags of cocaine, and twenty-six .22 caliber bullets in the car inside a stuffed bear. The notes further state "[c]harges are pending on this." Prince Isaac's Supplemental Br. in Supp. of His Mot. for New Trial Based on *Brady* Violations and Newly Discovered Evidence Pursuant to Fed.R.Crim.P. 33(b)(1) Ex. G, at 3. The Government did not produce the notes to Isaac before or during trial. Rather, during trial, Isaac had access only to Colon's criminal extract, which did not mention this incident, and a police report written by Lancaster Detective Lieutenant Sam Gatchell describing the November 2004 stop and the items found in the car (Gatchell Report). The Gatchell Report was accompanied by a fax cover sheet dated September 2007, in which Gatchell advised the prosecutor in this case that at the time of the incident, he did not think the District Attorney would file charges regarding the stop because the evidence was not strong enough to link either Colon or Isaac with the drugs. During trial, Lindsay Colon testified regarding a juvenile charge for possession of marijuana and an arrest on February 28, 2007, for possession with intent to deliver crack cocaine, but she did not mention the November 2004 arrest or any charges stemming from it.

---

agree Count 5 concerns sales during Isaac's South Carolina trip, which appears to have

occurred in October 2004.

The third piece of evidence Isaac claims was wrongly withheld is a signed version of Colon's June 9, 2005, witness statement, in which Colon described her relationship with Isaac and her knowledge of Isaac's activities. During the trial, the only copy of Colon's witness statement produced by the Government was unsigned. However, in advance of a post-trial evidentiary hearing originally scheduled for January 2012, the Government produced a binder of proposed exhibits, which contained the same witness statement except that this one was signed by Colon on every page.

Finally, the fourth piece of evidence Isaac asserts the Government improperly withheld is a memorandum indicating a prosecution witness, Tracy Ramirez, was not cooperating with authorities. During the trial, Ramirez testified for the Government that she sold crack cocaine for Isaac twice and she was shot in the stomach by someone other than Isaac after she failed to pay Isaac his drug proceeds. On cross-examination, Ramirez admitted she had been in an intimate relationship with the shooter and she had previously testified that the shooting "could have been over many different reasons." Trial Tr. 5.229, Sept. 14, 2007. Prior to trial, the Government provided Isaac a report authored by Detective Lieutenant Kent Switzer, documenting Ramirez's refusal to cooperate with the Government's efforts to help her enter a witness protection program and her insistence on returning to an unsafe location (Switzer Report). After the trial, however, Isaac discovered on the CD given to him by the Chester County ADA a memorandum from Detective Michael Winters of the Lancaster City Bureau of Police to Letty Kress of the Pennsylvania Attorney General's Office Witness Protection Program (Winters Memo). In the memo, Winters recommended that Tracy Ramirez be removed from the witness protection program because she refused to cooperate with authorities and repeatedly returned to the neighborhood where she had been shot.

## DISCUSSION

### A. New Trial under *Brady v. Maryland*

 Pursuant to *Brady v. Maryland,* the Government must provide the defense in criminal cases with exculpatory material, including impeachment material, that it either possesses or could obtain through due diligence. *See* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 155, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To establish a due process violation under *Brady* sufficient to warrant a new trial, "a defendant must show: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir.2005) (citation omitted). Failure to provide such evidence is a violation of due process, "irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194.

 Evidence is not suppressed, however, if the defendant could have obtained it "from other sources by exercising reasonable diligence." *United States v. Perdomo,* 929 F.2d 967, 973 (3d Cir.1991). "[I]f the defendant either knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence," then there has been no *Brady* violation. *Id.; see also Wilson v. Beard,* 589 F.3d 651, 659 (3d Cir.2009) ("The purpose of *Brady* is not to require the prosecution to disclose all possibly favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial."). The prosecutor

"has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

 Even if the prosecution suppressed evidence favorable to the defendant, in order to obtain relief, the defendant must establish the suppressed evidence is material, meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 434–35, 115 S.Ct. 1555 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375. Materiality is *not* a sufficiency of the evidence test; "[a] defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles*, 514 U.S. at 434–35, 115 S.Ct. 1555; *see also id.* at 434, 115 S.Ct. 1555 ("[A] showing of materiality does *not* require demonstration by a preponderance that disclosure ... would have resulted ultimately in the defendant's acquittal." (emphasis added)). Instead, the defendant must show "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S.Ct. 1555. Additionally, courts should not look at each piece of undisclosed evidence by itself, but should evaluate the cumulative effect of the undisclosed evidence. *Id.* at 436–37, 115 S.Ct. 1555. The appropriate remedy for a *Brady* violation is a new trial. *United States v. Coleman*, 862 F.2d 455, 458–60 (3d Cir.1988).

 Impeachment evidence falls within the scope of *Brady* material, if "the reliability of a given witness [is] determinative of guilt or innocence." *Giglio*, 405 U.S. at 154, 92 S.Ct. 763. Thus, "[m]aterials that must be disclosed are those ... that might affect the jury's judgment of the credibility of a crucial prosecution witness." *United States v. Hill*, 976 F.2d 132, 134–135 (3d Cir.1992); *see also Bagley*, 473 U.S. at 676, 105 S.Ct. 3375 (explaining that impeachment evidence falls within the *Brady* rule).

## B. New Trial under Rule 33

 Isaac alternatively argues he is entitled to a new trial under Federal Rule of Criminal Procedure 33 based on the totality of the suppressed evidence. According to Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). Five requirements must be met before a court may grant a new trial on the basis of newly discovered evidence: (1) "the evidence must be in fact newly discovered, i.e. discovered since trial"; (2) "facts must be alleged from which the court may infer diligence on the part of the movant"; (3) "the evidence relied on must not be merely cumulative or impeaching"; (4) "it must be material to the issues involved"; and (5) "it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *United States v. Quiles*, 618 F.3d 383, 388–89 (3d Cir.2010) (quoting *United States v. Saada*, 212 F.3d 210, 216 (3d Cir.2000)).

 The Third Circuit has recognized that in some instances, a court should not deny a new trial on the basis of newly discovered evidence simply because

the evidence is impeaching in character, notwithstanding the third requirement listed above. *Id.* at 391. However, in order to grant a new trial based on impeachment evidence, "[t]here must be something more, i.e. a factual link between the heart of the witness's testimony at trial and the new evidence. This link must suggest directly that the defendant was convicted wrongly." *Id.* at 392. If the newly discovered impeachment evidence "throw[s] severe doubt on the truthfulness of the critical inculpatory evidence that had been introduced at the trial … then a defendant may be entitled to a new trial." *Id.* at 393; *see also United States v. Ortiz,* No. 92–00592–01, 1993 WL 131329, at *7–10 (E.D.Pa. Apr. 23, 1993); *United States v. Lipowski,* 423 F.Supp. 864, 867 (D.N.J.1976).

■ Given that the standard for a new trial under Rule 33 is that the newly discovered evidence "would probably produce an acquittal," *see Quiles,* 618 F.3d at 389 (citation omitted), the standard for granting a motion for a new trial pursuant to Rule 33 is more rigorous than the standard for granting a motion for a new trial based on a *Brady* violation. *See United States v. Johnson,* 380 F.Supp.2d 660, 678 (E.D.Pa. 2005), *aff'd,* 195 Fed.Appx. 52 (3d Cir. 2006); *Ortiz,* 1993 WL 131329, at *10. Accordingly, if the newly discovered evidence fails to meet the third prong of a *Brady* violation—i.e., that there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different—the evidence necessarily must also fail the fifth prong of the Rule 33 test.

### C. Motion for New Trial

Isaac asserts the four pieces of newly discovered evidence, when viewed collectively, cast doubt on the fairness of his entire trial. Although the Court must consider the cumulative effect of these four pieces of evidence, its analysis will begin by reviewing each piece separately.

■ As to the first piece of evidence, Isaac contends the undisclosed cell phone records, Set 2, impeach Colon's testimony about selling crack for Isaac while he was in South Carolina, and her impeachable testimony undermined the credibility of her other testimony, thereby infecting the entire trial. Isaac also contends this evidence is more than mere impeachment evidence because it contradicts Colon's testimony that she answered Isaac's cell phone and conducted multiple drug transactions on his behalf while he was in South Carolina, which was the basis for his conviction on Count 5 for distribution of crack.

The Court finds this evidence was suppressed because it was in the possession of the Government and was not produced. The Government has a responsibility to learn about relevant evidence even when the material is with the police officers or investigators. Further, Isaac cannot be faulted for a lack of diligence in discovering the materials in question. Having received Set 1, Isaac would have had no reason to think a second set of telephone records existed or could be used to impeach Colon, and he was under no duty to seek out Set 2. *See United States v. McLaughlin,* 89 F.Supp.2d 617, 628 (E.D.Pa.2000) ("A criminal defendant, who has no burden of proof at trial, cannot be held at fault for not anticipating the perjury of a chief government witness and searching for evidence through which he could prove that perjury."). This evidence was also favorable to the defense as it would have undermined Colon's testimony about Isaac instructing her to distribute drugs for him while he was on his trip and might have caused the jury to doubt her testimony in general.

The evidence, however, does not satisfy the third prong of a *Brady* violation because it is not material to Isaac's guilt on Count 5 in particular or any other Count in general. The probability that the outcome would have been different if Isaac had this evidence is not high enough to undermine confidence in the conviction for three reasons. First, another witness, Shanika Wilson, testified she also helped Colon sell the drugs during Isaac's trip to South Carolina. Trial Tr. 5.57–5.61, Sept. 14, 2007. Even though Wilson did not identify the particular dates, the use of a cell phone, or the quantities of drugs, her testimony corroborated Colon's account of selling drugs for Isaac. *Id.* Second, when Colon identified Isaac's number as 717–203–3409, she was referring to a cell phone she possessed during a trip to Coatesville with Isaac, and not Isaac's trip to South Carolina. Although both trips took place in October 2004, Trial Tr. 2.169, Sept. 11, 2007; Trial Tr. 3.10–3.23, Sept. 12, 2007, Colon never testified that Isaac had only one cell phone or that the phone she used during Isaac's South Carolina trip was associated with the number that was the subject of Set 2. Thus, even though Set 2 shows a cell phone associated with Isaac was not answered during his trip to South Carolina, this newly discovered evidence does not foreclose the possibility Colon sold drugs on his behalf during that time. Third, many other witnesses corroborated Colon's testimony regarding her other interactions with Isaac outside of the South Carolina trip. Even if the Set 2 was disclosed prior to trial, providing impeachment evidence as to Colon, given the other corroborating testimony, it is unlikely the new records would have impacted the entire trial.

■ As to the investigative notes discovered on the CD, even though the document states charges were "pending" against Colon, no charges were actually filed. Isaac asserts he could have impeached Colon by exploring whether she testified in exchange for these charges being dropped; however, it is pure speculation that Colon testified in exchange for such a benefit, especially when the investigating officer indicated he did not think the District Attorney would file charges because the evidence linking Colon to the drugs was not strong enough. The jury was not misled when it was told Colon's criminal misconduct was limited to juvenile and misdemeanor charges because Colon was never charged for this incident. In addition, although Isaac was aware Colon had been stopped in his car, he chose not to cross-examine her about the details of the incident. Finally, Colon was cross-examined at length regarding her prior interactions with the police and any charges against her. Trial Tr. 3.107–3.110, Sept. 12, 2007. Further, during cross-examination, the defense made clear Colon was testifying pursuant to an immunity agreement which covered everything she told the Government from June 23, 2005, to the present day, whereby she "could not be charged with any crimes related to this matter." *Id.* at 3.159. Thus, the jury was aware she was receiving a benefit from testifying, and even if she received an additional benefit related to the possible charges from the car incident, this evidence is cumulative and would not significantly affect the jury's judgment of Colon's credibility. Therefore, even if these notes were withheld, they are not material. This evidence is purely impeachment evidence, and given her testimony on both direct and cross-examination about her criminal history and immunity agreement, there is not a reasonable probability, had this information been disclosed, the result of the proceeding would have been different.

■ Similarly, the signed witness statement is also not material evidence

warranting a new trial. Isaac asserts Colon's cross-examination was compromised because without a signed statement to use for impeachment, Colon was able to deflect questions about her prior inconsistent statement by denying the accuracy of the report or asserting she did not recall making such statements. Because the statement was unsigned, the jury could have decided the statement did not accurately reflect Colon's discussion with investigators. Isaac also argues had he obtained the signed document, it would have been admissible under Federal Rules of Evidence 801(d)(1)(A) (statements that are not hearsay) and 803(5) (recorded recollection) as substantive evidence. Instead, Isaac was limited to using the unsigned statement purely for impeachment purposes.

When confronted with the statement, however, Colon agreed it was an accurate record of what she had told the police.[6] Trial Tr. 3.161, Sept. 12, 2007. Throughout the questioning, she stated repeatedly she remembered the questions and answers in the statement. *Id.* at 3.160–3.165. Although on several occasions she claimed she did not recall giving a particular answer, not once did she deny having said something contained in the report. Because Colon adopted the statement on the stand, the failure to disclose the signed version is not fatal to the cross-examination

■ As to the last piece of evidence, Isaac argues the Switzer Report he received before trial does not document the same obstructive conduct by Ramirez as the Winters Memo. He insists the Winters Memo could have cast significant doubt on Ramirez's testimony that she was gunned down as a result of her participation in a drug ring and that her safety was still at risk. If the jury had reason to disbelieve her testimony because of her refusal to cooperate with authorities, then they would have had reason to disbelieve her testimony about the nature and quantity of the drugs that she allegedly sold for Isaac.

However, as the Government points out, the fact that Ramirez was not cooperating with the police or with the Attorney General's witness protection program was no mystery. The Switzer Report documents that Ramirez failed to show up for several follow-up appointments from October 26, 2004, to November 4, 2004, insisted on returning to an unsafe location, and initially refused to be placed in the witness protection program. The Winters memo adds only that because of Ramirez's lack of cooperation and repeated return to the neighborhood where she had been shot, Winters recommended she be removed from the witness protection program. The information in the Winters Memo is cumulative and of extremely limited, if any, impeachment value against Ramirez. In addition, the defense thoroughly impeached Ramirez at trial through her prior arrests, convictions, and inconsistent statements. *See* Trial Tr. 5.221–5.245, Sept. 14, 2007.

■ When reviewing potential *Brady* violations, a court should not look at each piece of undisclosed evidence by itself, but should evaluate the cumulative effect of the undisclosed evidence. *Kyles,* 514 U.S. at 436–37, 115 S.Ct. 1555. Having considered the phone records, the investigative notes on Colon's arrest, Colon's signed statement, and the Winters Memo, the Court finds the cumulative effect of this undisclosed evidence does not undermine Isaac's convictions. Isaac unques-

---

6. The defense attorney asked Colon "if the question and answer is here in this statement, is it fair to say that that's the answer you gave to that question?" Trial Tr. 3.161, Sept. 12, 2007. She replied "Yes." *Id.*

 

tionably could have used the materials to impeach Colon and Ramirez. However, a new trial is only warranted when the suppression of *Brady* evidence "undermines confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375. The nondisclosure of this evidence, while not condoned by this Court, did not result in an unfair trial and does not put the case in such a different light as to place Isaac's convictions in doubt. The jury was presented with substantial evidence of the Isaac's guilt, both direct and circumstantial, from multiple and corroborating sources. When viewed as a whole and in light of the prosecution's case, the Government's failure to provide this evidence to the defense prior to the trial did not lead to an untrustworthy guilty verdict.

Because the Court has determined the newly discovered evidence, when viewed collectively for *Brady* purposes, does not establish a reasonable probability the result of the proceeding would have been different, the evidence also does not meet the more demanding standard imposed for motions for new trial based on newly discovered evidence, i.e., that the evidence would probably produce an acquittal. Thus, Isaac's convictions must stand. Accordingly, the motion for a new trial will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 16th day of May, 2014, for the reasons set forth in the accompanying Memorandum, it is ORDERED Defendant Prince Isaac's Motion for a New Trial Under Federal Rule of Criminal Procedure 33(b)(1) (Document 340) is DENIED.

It is further ORDERED Isaac's Motion for Leave to Proceed in Forma Pauperis (Document 327) and Motion for Transcripts (Document 355) [7] are DISMISSED as moot.

It is further ORDERED Isaac's Motion to Appoint Counsel (Document 397) is DENIED.[8]

---

7. Isaac asserts he needs the transcripts from his post-conviction motions hearing, sentencing hearing, and a November 17, 2008, hearing in order to "thoroughly present issues complained of in notice of appeal to the United States Courts of Appeal (Third Circuit)." Because the Third Circuit already reviewed and ruled upon Isaac's appeal, *see United States v. Prince Isaac,* 655 F.3d 148 (3d Cir. 2011), his request for transcripts for this purpose is moot.

8. By Order dated January 26, 2012, this Court appointed attorney Caroline Goldner Cinquanto, Esq. to represent Isaac pursuant to the Criminal Justice Act. This appointment was for purposes of his motion for new trial and resentencing. In the above-referenced motion, Isaac requests counsel for his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and the Court denies this request.