**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shawn Dale PIKE, Defendant–Appellant.**

No. 93–4155.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 1994.

Wallace T. Boyack, Salt Lake City, UT, for appellant.

Richard N.W. Lambert, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., with him on the brief), Salt Lake City, UT, for appellee.

Before ANDERSON, McKAY, and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant and Appellant Shawn Dale Pike appeals his criminal conviction on a single count of sexual abuse of a minor within Indian country in violation of 18 U.S.C. §§ 1153(a) and 2243(a). He contends that the evidence of the sexual act element is insufficient to support the conviction, because: (1) the victim's testimony establishing the sexual act element is refuted by the medical testimony of the examining physician and by the physical evidence; and (2) certain purported inculpatory statements by Mr. Pike to a police officer, even if made, lacked context and therefore were meaningless as either a confession or an admission of consciousness of guilt. We reject the first argument and need not reach the second. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the conviction.

## BACKGROUND

On the evening of October 18, 1991, a group of people including Mr. Pike, Lawrence "Terry" Jenks, fourteen-year-old Elaine Rose Colorow, and two other women left the trailer of Ms. Colorow's uncle, where they had been drinking and visiting, and drove to a convenience store in Roosevelt, Utah, to buy more beer. They stopped at two bars, then the two women left and Ms. Colorow and the men went to Mr. Jenks' trailer, where Mr. Jenks went to sleep or passed out on the couch. Ms. Colorow testified that Mr. Pike led her into the bedroom, where they had sexual intercourse. R.Vol.

III at 51–55, 93–96. Ms. Colorow said she told Mr. Pike to stop and complained of pain. *Id.* at 54. She said he penetrated her twice. She said that after intercourse, she put her pants back on, took a blanket, went into the living room and slept in a chair. Neither during nor after the sexual encounter did Ms. Colorow call out to Mr. Jenks, who she said was still passed out from drinking. She said she was unaware that Mr. Jenks' brother was also asleep in the trailer. Mr. Jenks testified that when he awoke the next morning, Ms. Colorow was fully clothed and wrapped in a blanket from the bedroom, sitting in a living room chair. Mr. Pike denies that the sexual encounter took place. R.Vol. II at 99–100.

One or both of the men took Ms. Colorow back to her uncle's trailer that morning, and her mother subsequently took her to the hospital. The hospital's emergency room was busy, so Ms. Colorow was not seen by a physician until approximately 5:30 p.m. on October 19. She had not taken a bath or changed her clothes in the interim. The examining physician, Dr. Keith Evans, collected various samples for evidence. At trial, he testified that her hymen had been intact but stretchable enough to admit a male penis, *id.* at 58, and that he had found no swelling or redness in the vaginal area. *Id.* at 68. According to a state serologist, tests from swabbings of vaginal fluids and pubic hair combings, as well as tests on her clothing and the bedding, showed no traces of Mr. Pike's seminal fluid or the sperm protein known as acid phosphatase. *Id.* at 79–87.

A year later, on October 15, 1992, a sealed indictment was filed and a sealed warrant issued for Mr. Pike's arrest. Appellant's App. at 156. Mr. Pike surrendered himself on October 18, after his sister, a Bureau of Indian Affairs ("BIA") police officer, told him of the warrant, but the record does not indicate whether he was aware of the specific charges before the indictment was unsealed at his arraignment on October 21.[1] BIA Police Officer Kenneth Blackbird testified that on October 18 he transported Mr. Pike

from the jail in Fort Duchesne to Vernal, Utah, to appear before a federal magistrate. The officer said that during the drive, Mr. Pike volunteered the statements: "I am going over to face the music. I admit I partied with her and I did it, but now I've got to go face the music," R.Vol. III at 16–17, and later said: "[t]hat we was out partying, but he didn't know that she was that young." *Id.* at 30. The officer made no written report of the conversation in the police car. He gave no *Miranda* warnings, and the trial court held that none were necessary because the statements were voluntary, spontaneous and unsolicited. *Id.* at 32. Mr. Pike denies making any of these statements. R.Vol. II at 91.

Following a bench trial, the district court found Mr. Pike guilty and sentenced him to twenty-one months in federal custody, followed by a supervised term of two years. He appeals.

## DISCUSSION

Mr. Pike argues that the evidence is insufficient to support his conviction. We review the record *de novo* when the sufficiency of the evidence is challenged. *United States v. Coleman*, 9 F.3d 1480, 1482 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 578 (1994). The standard for sufficiency is whether any rational factfinder, viewing the evidence and reasonable inferences therefrom as a whole in the light most favorable to the prosecution, could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Leopard*, 936 F.2d 1138, 1140 (10th Cir.1991).

## I. CONFLICTING TESTIMONY

Mr. Pike first contends that Ms. Colorow's testimony establishing the sex act element of the crime should be disregarded, because it was refuted by the physical evidence and the medical testimony of the examining physician, Dr. Evans. Mr. Pike's counsel con-

---

1. Nor does the record indicate why no charges were filed for a full year after the incident. It seems, however, that Mr. Pike was at least aware of the investigation, because blood, saliva and hair samples apparently were taken from him at some point prior to December 2, 1991. *See* R.Vol. I, Def.'s Exh. 2.

ceded at oral argument that the doctor did not say specifically that Ms. Colorow's version of events was impossible in light of the physical evidence. Counsel argued, however, that the doctor's testimony and the laboratory test results, taken as a whole, cannot be reconciled with her testimony.

Specifically, Mr. Pike points to the absence of any test results corroborating Ms. Colorow's account and to statements by Dr. Evans that he would have expected to find traces of acid phosphatase in Ms. Colorow's vaginal fluids as late as twelve to twenty-four hours after intercourse. R.Vol. II at 67, 71. Mr. Pike also suggests that the import of Dr. Evans' testimony is that it would have been impossible for Mr. Pike to penetrate Ms. Colorow twice and cause the pain she described without rupturing her hymen. He further argues that had there been pain, there would have been evidence of trauma. Appellant's Reply Br. at 5.

A reviewing court must disregard trial testimony if it finds that the testimony is inherently incredible or impossible on its face. That is not the situation here. Dr. Evans testified that he could not say with scientific certainty that Ms. Colorow had or had not had intercourse. R.Vol. II at 69. The doctor's testimony is equivocal and admits of the possibility that intercourse could have occurred.[2] Nor do the negative laboratory results require that Ms. Colorow's testimony be disbelieved. Dr. Evans testified that a rape kit should be done within four hours of intercourse "to be very effective. At six to eight hours it is becoming questionable and beyond that the results may not be conclusive." *Id.* at 57.

We decline to create a rule that expert testimony or physical evidence which merely conflicts with or fails to support the victim's testimony, but which does not refute it, must be preferred to that testimony. Ms. Colorow's version of what happened was not impossible. A rational factfinder, viewing her testimony and the other evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the sexual act occurred as she described.

## II. CONFESSION/ADMISSIONS OF APPELLANT

Mr. Pike argues that statements he allegedly made to Officer Blackbird lacked context and therefore were meaningless as either a confession or an admission of consciousness of guilt.[3] Mr. Pike's counsel conceded at oral argument, however, that even without these statements, the conviction need not be reversed unless we also disregard Ms. Colorow's testimony. Accordingly, we need not address Mr. Pike's arguments concerning those statements.

For the foregoing reasons, Mr. Pike's conviction and sentence are AFFIRMED.

---

2. On the one hand, for example, Dr. Evans said that nothing he found other than the hymen's elasticity suggested penetration, and the elasticity could have been caused by other factors. R.Vol. II at 71–72. On the other hand, he said a penis could have entered and not torn the hymen if penetration had occurred without trauma, and there was no evidence of trauma here. *Id.* at 58. He also said he did not know how many penetrations were possible without tearing, *id.* at 70;

and penetration could have caused Ms. Colorow some pain, although not as much as it would have caused someone with less elastic tissues. *Id.* at 59.

3. Mr. Pike denies having made the statements, but he presents no arguments on that issue. It is unclear from the record whether he preserved any argument on that issue for appeal.