**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JACOB LANCE PRITCHETT,

    Defendant - Appellant.

No. 23-7070
(D.C. No. 6:22-CR-00038-RAW-1)
(E.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Jacob Lance Pritchett was tried and convicted of aggravated sexual abuse, 18 U.S.C. § 2241(c), and abusive sexual contact, 18 U.S.C. § 2244(a)(5), both within Indian Country, 18 U.S.C. § 1153. The district court sentenced him to life in prison. He appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

### A. Investigation

M.S. is the daughter of one Mr. Pritchett's cousins.  In 2021 she told an aunt that Mr. Pritchett had sexually abused her as a child.  The Cherokee Nation Marshal Service learned of the allegations, and an investigator interviewed M.S.

The investigator described M.S. as "emotionally distraught" during the interview.  R. vol. 3 at 318.  She told him Mr. Pritchett had sexually molested her when she was in kindergarten and fourth grade.  As summarized by the investigator, M.S. told him Mr. Pritchett had "placed his penis in her vagina and in her mouth and had done everything to her."  *Id.* at 339.  She did not describe specific instances of abuse in detail, and the investigator did not ask her to do so.  The investigator asked if it had happened more than ten times, and she indicated it had.  She told the investigator that given the passage of time and her age, she was unsure exactly when the instances of abuse had occurred, and the investigator testified that she "wasn't entirely sure on the timeline."  *Id.* at 333.

The investigator interviewed several of M.S.'s family members.  During his investigation, he learned of allegations Mr. Pritchett had also inappropriately touched another minor female relative, B.P.

Mr. Pritchett was indicted for one count of aggravated sexual abuse of M.S., § 2241(c), and one count of abusive sexual contact with B.P., § 2244(a)(5).

**B. Trial Testimony**

Mr. Pritchett maintained his innocence and proceeded to trial in July 2022. The jury heard testimony for two days, including from M.S., B.P., and Mr. Pritchett.

**1. M.S.'s Testimony**

M.S., who was eighteen at the time of trial, testified that Mr. Pritchett had sexually assaulted and raped her on multiple occasions beginning when she was around six years old.

M.S. described several specific instances of abuse in more detail in her testimony. She testified that on one occasion when Mr. Pritchett was watching her at her grandfather's house, "he told me that we could play games afterwards, but he laid a blanket down and laid me down and then proceeded to . . . rape me," also specifying that his penis entered her vagina. *Id.* at 88. She described another incident when Mr. Pritchett took her into the bathroom and ejaculated on her face. M.S. also described an incident at an aunt's house when Mr. Pritchett showed her a dildo and asked, "Do you want this one or do you want mine?" *Id.* at 95. He also said, "Mine's not as big." *Id.* She testified that he made her choose between the dildo and his penis, then laid her on her stomach and raped her while standing behind her. She remembered telling him to stop, that he covered her mouth with his hand, and that she bled afterwards.

In addition to describing these incidents, M.S. testified that Mr. Pritchett had sexually abused her on multiple other occasions, continuing until around the time she was in fourth grade.

3

In a sidebar with the judge during M.S.'s testimony, Mr. Pritchett's lawyer raised a concern that although M.S. indicated she had provided details of specific assaults in a pre-trial meeting with prosecutors, those facts went beyond what she had told the investigator and had not been disclosed to the defense. However, he did not contemporaneously object to her testimony or move to exclude it.

In cross-examination, Mr. Pritchett's lawyer asked M.S. about the details she had described about specific incidents of abuse. He asked about her testimony that Mr. Pritchett laid a blanket on the floor, ejaculated on her face, showed her a dildo, raped her from behind, and covered her mouth. He asked M.S. if she agreed those facts were significant, and he highlighted that she had not told these facts to the investigator or to family members before trial. He also cross-examined her about possible inconsistencies between her testimony and her statements to the investigator about when and how many times Mr. Pritchett had abused her.

M.S. testified, in part, that during her interview with the investigator she was "nervous," "scared," "overwhelmed," and "wasn't very comfortable," and that the investigator, who was male, had not pressed her to "tell . . . every detail." *Id.* at 146, 144. By contrast, in her pre-trial meeting with prosecutors, with females present, she "was a little bit more comfortable, and they made me give them more descriptions, more in-depth detail." *Id.* at 144.

In addition, Mr. Pritchett's trial counsel cross-examined M.S. about an uncle who was later convicted for sexually abusing another family member, suggesting it could have been the uncle who abused her, not Mr. Pritchett. On re-direct

4

examination, M.S. testified that she was certain it was Mr. Pritchett, that she was not confusing him with the uncle, and that the two do not look alike.

## 2. Evidence Related to B.P.

B.P., who was twenty-two at the time of trial, is also a daughter of one of Mr. Pritchett's cousins. She testified to an incident that occurred shortly before she started fifth grade in which Mr. Pritchett put his hand inside her shorts and rubbed her vagina, over her underpants. The aunt in whose house this occurred and her former partner both testified, generally corroborating B.P.'s account of the night of this incident.

## 3. Other Testimony

The prosecution also introduced testimony under Federal Rule of Evidence 414 from D.W., another minor relative of Mr. Pritchett. D.W. described an incident when he was thirteen in which Mr. Pritchett pressed a bottle to his anus, through his clothing, in a way that was painful and D.W. felt was not playful. The prosecution also presented testimony from the investigator, an expert on the dynamics of child sexual abuse, and members of M.S. and B.P.'s extended family, who corroborated various aspects of their testimony.

Mr. Pritchett called several family members and a neighbor as witnesses. In his own testimony, he denied the allegations.

The jury convicted Mr. Pritchett on both counts.

### C. Sentencing

A mandatory minimum sentence of thirty years' imprisonment applied to Mr. Pritchett's conviction under § 2241(c). Among other increases to the offense level under the Sentencing Guidelines, the presentence investigation report concluded that a five-level increase should apply because Mr. Pritchett had engaged in "a pattern of activity involving prohibited sexual conduct." *U.S. Sent'g Guidelines Manual* § 4B1.5(b) (U.S. Sent'g Comm'n 2021) (USSG). With that increase, the advisory Guidelines sentence was life imprisonment.

Mr. Pritchett objected that § 4B1.5(b) should not apply because he had no prior convictions for any sex offense. The district court concluded that although he had not previously been convicted of a sex offense, the conduct for which he was convicted included multiple occasions of prohibited sexual conduct. It observed that the application notes to § 4B1.5(b) allow a defendant's conduct during the offense of conviction to be considered when determining if § 4B1.5(b)(1) applies. It found a preponderance of the evidence supported application of § 4B1.5(b)(1) and sentenced Mr. Pritchett to life imprisonment.

### II. Discussion

#### A. Alleged *Brady/Giglio* Violation

Mr. Pritchett first argues that his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by the admission of M.S.'s testimony describing details of specific instances of

abuse.  He argues he was denied a fair trial because the details described in M.S.'s trial testimony were not disclosed to him before trial.

To prevail on a *Brady* claim, "a defendant must prove that [1] the evidence was favorable, [2] the government suppressed the evidence, and [3] the suppression resulted in prejudice."  *United States v. Herrera*, 51 F.4th 1226, 1242 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2636 (2023).  To establish the required prejudice, a defendant must show the suppressed evidence was material, meaning "that timely disclosure would have created a reasonable probability of a different result."  *Id.*  Put another way, Mr. Pritchett would need to show that pre-trial disclosure of the details of M.S.'s testimony would have "put the whole case in such a different light" that the alleged suppression undermines our confidence in the verdict.  *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1227 (10th Cir. 2024) (internal quotation marks and brackets omitted).

Mr. Pritchett acknowledges his claim is subject only to plain-error review. *See Herrera*, 51 F.4th at 1243 ("[W]hen the defendant fails to preserve a claim of due process, we review only for plain error.").  To warrant reversal, he therefore would need to show "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Headman*, 594 F.3d 1179, 1183 (10th Cir. 2010) (internal quotation marks omitted).

We see no plain error in the admission of M.S.'s testimony.  Even assuming the prosecution should have disclosed the details of assaults that M.S. described at

7

trial, which is doubtful, Mr. Pritchett still has not shown he was prejudiced. M.S. told the investigator Mr. Pritchett raped and sexually assaulted her multiple times during the period when she was in kindergarten through fourth grade. A recording of that interview was disclosed to Mr. Pritchett. M.S.'s trial testimony was consistent with the facts disclosed in the interview, in which she made the same essential accusation. After hearing testimony from M.S. and Mr. Pritchett, the jury believed M.S. Mr. Pritchett has not shown how disclosure of facts related to specific incidents of abuse would "have created a reasonable probability of a different result," such that we could conclude the district court plainly erred. *Herrera*, 51 F.4th at 1242.

Mr. Pritchett argues he was prejudiced because pre-trial disclosure would have allowed him "to methodically point out inconsistencies in M.S.'s first interview and statements instead of having to improvise in the moment." Aplt. Opening Br. at 15. And he argues a jury might have been persuaded that "it was unbelievable for M.S. to not reveal" these details to anyone before trial. *Id.* However, his trial counsel cross-examined M.S. on exactly these points. He questioned her about the same facts he now argues were improperly suppressed, including defendant laying a blanket on the floor, ejaculating on her face, showing her a dildo, raping her from behind, and covering her mouth. He also highlighted these alleged omissions or inconsistencies when cross-examining the investigator and in his closing argument. He argued the lack of detail in M.S.'s interview with the investigator and the purported inconsistencies in her testimony showed she was not telling the truth.

8

In short, Mr. Pritchett *did* make the arguments related to M.S.'s credibility that he now claims additional pre-trial disclosure would have facilitated. The jury heard those arguments but rejected them, choosing to believe M.S. The possibility that additional disclosure might have allowed Mr. Pritchett to better prepare or organize the same arguments does not "put the whole case in such a different light" that our confidence in the verdict is undermined, certainly not to a degree that shows plain error. *Johnson*, 99 F.4th at 1227 (internal quotation marks omitted).

Mr. Pritchett also argues that if he had known the details of M.S.'s allegations before trial, he could have used them "to determine if they were consistent with the *modus operandi* of M.S.'s uncle." Aplt. Reply Br. at 2. Overlooking the fact that this argument was first raised in Mr. Pritchett's reply brief, we conclude it also does not establish prejudice. Mr. Pritchett knew of the uncle and his conviction before trial and could have investigated any relevant facts. A central theme of his trial defense was to suggest it was likely the uncle, rather than Mr. Pritchett, who had abused M.S. As with his arguments about M.S.'s credibility, the jury heard and rejected this suggestion. Nothing in the record shows a likelihood that the jury would have reached a different verdict if Mr. Pritchett had known more details about M.S.'s allegations before trial.

## B. Sufficiency of the Evidence

Mr. Pritchett argues the evidence was insufficient to sustain his conviction for aggravated sexual abuse of M.S.[1]  He acknowledges that only plain-error review applies.  But in this context plain-error review "differs little from our de novo review of a properly preserved sufficiency claim because a conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements." *United States v. Otuonye*, 995 F.3d 1191, 1210 (10th Cir. 2021) (internal quotation marks omitted).

In reviewing the sufficiency of the evidence supporting a conviction, we view all the evidence, and any reasonable inferences to be drawn from it, in the light most favorable to the prosecution.  *Id.* at 1209.  We consider both direct and circumstantial evidence.  *Id.*  And we "consider[] the collective inferences to be drawn from the evidence as a whole," rather than examining it "in bits and pieces."  *United States v. Flechs*, 98 F.4th 1235, 1247–48 (10th Cir.) (internal quotation marks omitted), *cert. denied*, No. 24-5131, 2024 WL 4427368 (Oct. 7, 2024).

However, "we do not weigh conflicting evidence or consider witness credibility, as these duties are delegated exclusively to the jury."  *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003).  "Instead, we presume that the jury's findings in evaluating the credibility of each witness are correct."  *Id.* (internal

---

[1] In addressing sufficiency of the evidence, Mr. Pritchett mentions both counts of conviction, but does not make any argument that the evidence was insufficient to sustain his conviction for abusive sexual contact of B.P.

10

quotation marks and brackets omitted). Thus, we "resolve credibility issues in favor of the verdict." *Flechs*, 98 F.4th at 1248 (internal quotation marks omitted).

We will disregard witness testimony that is "inherently incredible." *United States v. Pike*, 36 F.3d 1011, 1013 (10th Cir. 1994). But "to be considered incredible," testimony "must be unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991) (internal quotation marks and brackets omitted).

After reviewing the evidence under these standards, "[r]eversal for insufficient evidence is proper only when no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Otuonye*, 995 F.3d at 1209–10 (internal quotation marks omitted). This standard of review is "restrictive"; we "cannot second-guess" the jury's fact-finding and have "little leeway" to set it aside. *Flechs*, 98 F.4th at 1248 (internal quotation marks omitted).

Applying these standards, Mr. Pritchett's conviction was supported by sufficient evidence. M.S.'s testimony, if believed, established both of the disputed elements required for conviction, including (1) that Mr. Pritchett knowingly engaged or attempted to engage in a sexual act with M.S. (defined to mean the "penetration, however, slight, of the vulva of M.S. by the penis of the defendant"); and (2) that M.S. was under twelve at the time.[2] R. vol. 1 at 117 (unchallenged jury instruction

---

[2] The other elements were uncontested, including that Mr. Pritchett is an Indian and the crimes occurred in Indian Country within the meaning of § 1153.

stating the elements required to convict under 18 U.S.C. §§ 2241(c) and 2246(2)(A)). The guilty verdict shows the jury believed M.S.'s testimony, as it could permissibly do. Nothing in her testimony can be disregarded as incredible or impossible to believe. *See Pike*, 36 F.3d at 1013. Because the jury heard her testimony and found it credible, we will not set aside its fact-finding. *See Evans*, 318 F.3d at 1018.

Mr. Pritchett's challenge to the sufficiency of the evidence is unpersuasive. He acknowledges that M.S. "testified that [he] 'raped' her . . . 'more than once.'" Aplt. Opening Br. at 22. But he contends that alleged inconsistencies in her statements about how many times she was raped, and at what ages, make her testimony not credible. He argues those inconsistencies, combined with the fact she at times stayed in a house with the uncle later convicted of sexual abuse, show the evidence was insufficient for the jury to convict.

However, "a witness's inconsistencies simply raise an issue of credibility, and the trier of fact is entitled to make the ultimate decision of whether testimony is to be believed." *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) (holding victim's testimony was sufficient to sustain sexual assault conviction, although it "did not correlate precisely with some of her out-of-court statements"). As Mr. Pritchett correctly acknowledges, our precedent "do[es] not allow for reversal based merely on inconsistencies," and shows that "sexual abuse victim testimony can, itself, be sufficient to maintain conviction." Aplt. Opening Br. at 23 n.5 (citing *Pike*, 36 F.3d at 1013 (affirming sexual abuse conviction based on victim's testimony despite argument that her testimony could not be reconciled with medical evidence)).

12

Viewing the evidence in the light most favorable to the prosecution and crediting the jury's credibility assessments, the same reasoning that applied in *Pike* also compels affirmance here: "[M.S.'s] version of what happened was not impossible.  A rational factfinder, viewing her testimony and the other evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the sexual act[s] occurred as she described."  *Pike*, 36 F.3d at 1013.

## C. Sentencing Enhancement Under USSG § 4B1.5(b)(1)

Mr. Pritchett argues the district court erred in applying USSG § 4B1.5(b)(1). This provision "provides for a five-level increase in the offense level if (1) 'the defendant's instant offense of conviction is a covered sex crime' and (2) 'the defendant engaged in a pattern of activity involving prohibited sexual conduct.'" *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1218 (10th Cir.) (quoting § 4B1.5(b)), *cert. denied*, 143 S. Ct. 467 (2022).

Mr. Pritchett maintains that the § 4B1.5 enhancement should not have been applied because he had not been convicted of any prior sex offenses.  He contends that by relying on the same conduct that underlies his conviction to increase his offense level, the district court engaged in impermissible double counting[3] and violated the Double Jeopardy Clause, punishing him twice for the same conduct.

---

[3] "Impermissible double counting occurs in Guideline calculations when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." *Cifuentes-Lopez*, 40 F.4th at 1220 (internal quotation marks omitted).

But the application notes to § 4B1.5 expressly provide that "[a]n occasion of prohibited sexual conduct may be considered for purposes of [§ 4B1.5(b)] without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." USSG § 4B1.5 cmt. n.4(B). And Mr. Pritchett acknowledges that the court has previously rejected his argument, in *Cifuentes-Lopez*, 40 F.4th at 1217, 1220, and similar cases. *See* Aplt. Opening Br. at 26 n.7; *see also United States v. Jackson,* 82 F.4th 943, 951 (10th Cir. 2023) ("[Section] 4B1.5(b)(1) explicitly states that the five-level increase is *in addition to the offense level* calculated under Chapters Two and Three of the guidelines." (emphasis added) (citing *Cifuentes-Lopez*, 40 F.4th at 1220)). We therefore affirm the district court's application of § 4B1.5(b)(1).

### III. Conclusion

We affirm Mr. Pritchett's conviction and sentence.

Entered for the Court

Nancy L. Moritz
Circuit Judge